TUOLUMNE REDEMPTION CO. v. SEDGWICK, Sheriff.

| 15 | 515 |
| 79 | 539 |
| 15 | 515 |
| 95 | 205 |
| 15 | 515 |
| 116 | 523 |
| 15 | 515 |
| 137 | 671 |
| 15 | 515 |
| 146 | 630 |

The Redemption Act of 1859 is in substitution of the Act of 1851, and applies to sales made after the passage of the Act of 1859, though made upon judgments rendered before.

The fact that judgments were recovered before the Act of 1859, does not vest in the holders of them a right to redeem from a sale made after the passage of the act, upon any terms different from those prescribed by the act. If the right to redeem under the Act of 1851 were an incident to any judgment rendered while that act existed, it was a portion of the remedy which might be taken away by the Legislature at any time before the right had become vested by the party availing himself of it.

The right to redeem under the statute, and the mode of asserting the right, are mere creatures of the statute. The right is given to a judgment creditor, and if before a party becomes a judgment creditor, the law be repealed, he has no claim to redeem, because he does not belong to the class of persons for which this remedy is furnished.

The right to redeem land is no part of the contract of indebtedness. It is a new privilege given by statute. It is a provision made by statute for a future contract, by pursuing which a purchase of land may be made. But as this provision is only a matter *out of which rights may grow*, the provision may be repealed at any time before a party avails himself of it.

The Legislature may give a particular privilege, or a right to contract on certain terms or in certain circumstances, but it may repeal the provision, or deny the right, as a general rule, as fully and completely as it can give them; or it may alter the terms at its pleasure, subject only to this: that it cannot repeal or alter so as to affect those contracts *which have been made* during the existence of the act authorizing them.

The statutory regulations as to redemption, are mere provisions of sale, governing the course of the process and its effect. They do not touch the contract of indebtedness, which stands, as it stood before, a valid obligation to pay money, with the sanctions furnished by law for its enforcement. And a sale without any right of redemption, is a valid and sufficient remedy for the enforcement of the contract.

An act denying a right of sale for the enforcement of the contract, would probably be such a vital assault upon the obligation as practically to destroy it, and therefore be unconstitutional. But a repeal of a right of redemption—in other words, an act making a sale absolute instead of conditional—would not impair the contract.

A debtor in default has no vested right to have his property sold in a particular way; and third persons, not parties to the contract, have no vested right to purchase the property of a common debtor sold at the instance of another creditor.

The doctrine of *Whitney* v. *Higgins*, (10 Cal. 554) as to equitable right of redemption in favor of certain persons not made parties to a mortgage foreclosure, applied to a peculiar state of facts.

Where plaintiffs, owners of certain judgments and decrees, had both the equitable and statutory right to redeem property sold, and exercised their right under the statute by redeeming from D., who had purchased under his own foreclosure, and then D., as assignee of other judgments, redeemed from plaintiffs: *Held*, that plaintiffs did not lose their equitable right of redemption, from the fact that they also asserted their statutory right—the subsequent redemption by D. leaving their claims unsatisfied.

APPEAL from the Fifth District.

*L. Quint*, for Appellant.

1. The redemption of the property in question from appellant could only be effected by showing a compliance with the Act of 1851.

The judgments held by appellant at the time Davis attempted to redeem, and those under which it had redeemed the property, were all rendered before the passage of the Act of March 28th, 1859; or if not, the contracts and debts upon which said judgments were rendered, were made long before. Hence, they were not affected by the Act of 1859, nor were the rights of the parties under the judgments affected. (*Seale* v. *Mitchell*, 5 Cal. 401; *Thorne* v. *San Francisco*, 4 Id. 127.) Besides, Davis, as well as defendant, viewed the law of 1851 as governing their rights on the first redemption, and appellant redeemed under that law.

Statutes not in terms retrospective should not be construed to affect past transactions, especially when such construction would work injustice. (*Quackenbush* v. *Danks*, 1 Denio, 128; *Sackett* v. *Andross*, 5 Hill, 334; 2 Inst. 492; 1 Black. Com. 45; *Dook* v. *Greenleaf*, 7 Johns. 477; *Von Schmidt* v. *Huntington*, 1 Cal. 65; *Mathewson* v. *Weller*, 3 Denio, 52; *Vedder* v. *Alkenback*, 5 Barb. 327.)

2. If the Act of 1859 is held to apply to contracts and judgments in existence before its passage, it is unconstitutional because impairing the obligation of contracts. The right to redeem under the Act of 1851 entered into the law of all contracts made while the statute was in force, and the Legislature cannot, by a subsequent act, impair its obli-

gation. (*Robinson et al.* v. *Magee*, 9 Cal. 81; *Blain et al.* v. *Williams et al.* 4 Litt. 35; *Lapsly* v. *Brashear et al.* Id. 47; *Thorne et al.* v. *City of San Francisco*, 4 Cal. 127; *Seale* v. *Mitchell et al.* 5 Id. 401; *Bronson* v. *McKenzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 Id. 608; *Green* v. *Biddle*, 8 Wheat. 1; *Quackenbush* v. *Danks*, 1 Denio, 3; Id. 594; 1 Coms. 129; 1 Kent Com. 419.)

3. We hold that a lien upon property, created and made such by express statute, can only be taken away or extinguished by a repeal of the statute, or a statute expressly extinguishing the lien. That it cannot be taken away by implication. The statute of 1859 is silent as to the payment of intermediate judgments and liens held by the first or prior redemptioners, and as it does not expressly take away or extinguish the liens, they take precedence, and a redemption is only effected by the payment and extinguishment of the intermediate judgments and liens held by the first or prior redemptioner; otherwise, the law is useless so far as any beneficial results are to be obtained under it, for the redemption might go on *ad infinitum*, and no debts or liens would ever be extinguished, nor would a title ever vest. Surely, such was not the intention of the Legislature. If such was its intention, then the act is clearly unconstitutional, and this case is not affected by it.

*Hoge & Perley*, also for Appellant.

1. The law of 1859, concerning redemptions of property sold under execution, is not in its terms retrospective, and should be so construed as not to affect past contracts, especially where such construction would work injustice. (*Quackenbush* v. *Danks*, 1 Denio, 129; *Sackett* v. *Andross*, 5 Hill, 131; *Society* v. *Wheeler*, 2 Gallison, 105; *Colder* v. *Bull*, 3 Dallas, 386; *Dash* v. *Vankleet*, 7 Johns. 477; *Ogden* v. *Blackledge*, 2 Cranch, 272; *Bedford* v. *Shelling*, 4 Serg. & R. 401; *Von Schmidt* v. *Huntington*, 1 Cal. 55; *Thorne* v. *San Francisco*, 4 Id. 127; *Seale* v. *Mitchell*, 5 Id. 401; Kennett's Petition, 4 Foster, 139.)

2. If the Legislature intended the act to have a retrospective operation, it is unconstitutional and void. (*Bronson* v. *Kinsie*, 1 How, 311; *McCracken* v. *Hayward*, 2 Id. 609; *Quackenbush* v. *Danks*, 1 Denio, 120; *Society* v. *Wheeler*, 2 Gallison, 105; *Townsend* v. *Townsend*, Peck, 15; *Bumgardon* v. *Circuit Court*, 4 Mo. 50; *Blair* v. *Williams*, 4 Litt. 35; *Lapsley* v. *Brashear*, 4 Id. 47; *People* v. *Supervisors*, 3 Barb. 65; *Greenfield* v. *Dorris*, 1 Sneed, 549; *Pool* v. *Young*, 7 Monroe, 587; *Robinson* v. *Magee*, 9 Cal. 81; *Smith* v. *Morse*, 2 Id.)

An act against common rights is void, although not prohibited by any express constitutional provision. (*Bowman* v. *Middleton*, 1 Bay, 252; *Osborn* v. *Huger*, 1 Id. 179; *University* v. *Williams*, 9 Gill. & J; *Bedford* v. *Shelling*, 9 Serg. & R. 401.)

*H. P. Barber*, for Respondent.

1. The Act of 1859 repeals the Act of 1851, because the two acts are repugnant; or at least, the Act of 1859 was clearly intended to prescribe the only rule that should govern redemptions. (*Davies* v. *Fairburn*, 3 How. 636; *Dexter Road Co.* v. *Allen*, 16 Barb. 15; Sedg. Const. Law, 121, 124–5; *Bartlett* v. *King*, 12 Mass. 545; Smith's Const. Law, 879; 4 Gill. & Johns. 6; 21 Pick. 375; *Billings* v. *Harvey*, 6 Cal. 381.)

2. The Act of 1859, by repealing the Act of 1851, does not impair the obligation of any contracts.

The contracts designed to be protected by the tenth section, art. 1, United States Constitution, "are contracts by which perfect rights, certain definite, fixed private rights of property are vested." (*Allen* v. *McKean*, 1 Sum. 277.) The contract here must be between the original debtor and his creditors, or between the contending redemptioners. As between debtor and creditor, the contract was, that the former should pay the obligation on which the judgment was obtained, or that his property should be sold to satisfy the same; though it is doubtful whether the sale of the debtor's property forms any part of his contract. (*Conkey* v. *Hart*, 4 Ker. 22.)

Now the change in the redemption law in no way impairs this contract—the debtor is still liable to pay. The redemption law only begins to operate after the "obligation" of the contract has been broken, and forced to its utmost extent by judgment, execution and sale. The redemption law is matter of remedy, and may be modified. (*Sturges* v. *Crowninshield*, 4 Wheat. 122; *Bronson* v. *Kinsie*, 1 How. 311; *Butler* v. *Pennsylvania*, 10 Id. 414; *Stocking* v. *Hunt*, 3 Denio, 274; *Lansing* v. *Smith*, 8 Cow. 146; *Guild* v. *Rogers*, 8 Barb. 502; 4 Ker. 22, in which the whole subject is reviewed; *Wheat* v. *State*, 1 Ala. 199; 2 Stew. 276; 5 Stew. & P. 276.)

Again: if there is claimed to be any implied contract between the various judgment creditors in regard to their rights of redemption, then such contract could not exist till there was something to contract about; and that did not arise, as between them, until after the sale, and after

the passage of the Act of 1859, by which any supposed contract between them must be governed.

But the right of redemption is not a contract.    Contracts depend on the agreement of parties; redemption is matter of law.

The true question in the case is, whether the change in the law divests vested rights; and to this the answer is, that the right here was only inchoate, not vested at the passage of the Act of 1859.    The right to redeem could not vest until after a sale.    The repeal of an act takes away all rights accruing under it, which have not become executed at the time of the passage of the repealing act.    (Dwarris on Stat. 676; *Rex* v. *Goodwin*, 4 Moore & Pyne, 341; Smith's Const. Law, 881 *et seq.* 396–8, 408; *Bigelow* v. *Prichard*, 21 Pick. 169; 2 Parsons on Cont. 534.)    In *People* v. *Livingston* (6 Wend. 526) and *Butler* v. *Palmer* (1 Hill, 324) this question has been expressly decided.

As to construction of statutes, see 9 Port. 266; 2 Cranch, 358; 2 Gilman, 1; 3 A. K. M. 489; 2 Pet. 662; 1 Pick. 45, 250; remarks of Coleridge, J. in 6 Adol. & E. 6; Smith's Const. Law, 575–6.

*Heydenfeldt*, also for Respondent.

1. To apply the Redemption Act of 1859 to contracts entered into before its passage, is not unconstitutional, as impairing the obligation of the contracts.

The parties to the contract were the debtor and creditor, and the obligation of the debtor was to pay, and to devote his property (if necessary) to sale, for the purpose of paying.    This is his entire obligation.    With this obligation the Act of 1859 does not in any way interfere.    It neither protects the debtor from paying, nor shields his property.

If it be assumed that the redemption law imposes another obligation, this new obligation must rest upon the purchaser at Sheriff's sale; and its nature must be to permit a redemption by creditors.    But the Act of 1859 does not interfere with this obligation; on the contrary, it allows a redemption by paying a less per cent.

The purchaser at Sheriff's sale is compelled to surrender the property to a redemptioner, because that is a condition which the law affixes to his purchase.    This surrender must be in conformity to the law in force at the time of his purchase, and not the law in force at the time of the contract between the creditor and debtor, because the purchase is a contract between the purchaser and judgment debtor, and must be

Tuolumne Redemption Co. *v.* Sedgwick.

governed by the law in force at the .time of such contract. He purchased under an execution of recent date, and is not required to look beyond the judgment and execution. He knows nothing of the date of the contract between creditor and debtor. He is presumed to know the law in force when he purchases. If he were compelled to go back further, the obligation of his contract would be impaired. (*Evans* v. *Montgomery*, 4 Watts & Serg. ; *Rudd and Miller* v. *Schalter and Gilman*, 1 Litt. 19 ; 1 Hill, 324 ; *People* v. *Livingston*, 6 Wend. 526 ; *Iverson* v. *Shorter*, 9 Ala.)

Again : A redemptioner, being a purchaser from the purchaser at Sheriff's sale, occupies the same relation to all others as the first purchaser did, and is governed by the same rules. Hence his purchase is under the existing law. He can have no greater rights than the one from whom he derives title.

2. If the purchase was not made under the existing law, then it was a purchase without any conditions whatsoever, and there was no right of redemption in any one, because the old law was repealed before the sale. (*Key* v. *Goodwin*, 4 Moore & Payne ; Dwarris on Stat. 4 Mann & Ry, 586 ; S. C. 9 Barn & Cress. 750 ; 6 Wend. 526 ; *People* v. *Herkimer Common Pleas*, 4 Wend.; *Butler* v. *Palmer*, 1 Hill; Smith's Const. L. secs. 765, 766.)

3. Appellant contends that statutes should not be so construed as to affect contracts or rights of action existing at the time of the action. A sufficient answer is, that this Act of 1859 has no such effect. It is designed to operate on sales made after its passage, and hence cannot be said to be retroactive. (*Iverson* v. *Shorter*, 9 Ala.) But conceding the act to be retroactive in respect to the contract between debtor and creditor, then I insist it is but a remedial statute, over which the Legislature has absolute power, because the remedy is not against the debtor,.but against the purchaser at Sheriff's sale. The debtor is indifferent and unaffected. He has performed the obligation of his contract, so far as the law can compel, by giving up his property, and cannot be benefited or injured in the scramble between contending purchaser and redemptioners, for the ownership. (*Iverson* v. *Shorter*, 9 Ala.; *Chadwick* v. *Moore*, 8 W. & S.; *Catlin* v. *Munger*, 1 Texas, 598; 1 How. 311, *dissenting opinion of McLean ;* 1 Hill, 334.) In this last case, Cowen, J. draws a distinction, which is urged upon this Court, to wit : the distinction between cases of positive statutes, and cases of repealing clauses simply. None of the authorities cited by appellant

Tuolumne Redemption Co. v. Sedgwick.

are cases where the remedy of a repealed statute was enforced. (2 Foster's N. H. 434–445; *Warfield* v. *Phelps*, 37 N. H. 294; 18 Me. 109; 23 Id. 318; 42 Id. 429; *Bolton* v. *Johns*, 15 Serg. & R. 145; 9 Gill, 299; 3 Zabriskie, 484; 3 Wheat. 213; Dissenting Opinion in *Thorne* v. *San Francisco*, 4 Cal. 154, and authorities there cited.)

It is suggested that the Act of 1859 does not operate to cut off intervening liens, if the party holding them pursues the proper remedy. For instance, if after the sale to Davis under the first lien, the plaintiff here had sold the property and bought it for the full amount of its judgments, and then redeemed from Davis, the latter, in redeeming back from plaintiff, would have had to add to his payment the amount of plaintiff's purchase, which would be full satisfaction of plaintiff's judgment.

This case was first argued at the January Term, 1860, and a decision forthwith being desired by the parties, judgment was announced from the Bench, reversing the judgment below. Subsequently, a reargument was ordered, and at the April Term, the opinion of the Court was delivered by BALDWIN, J.—COPE, J. concurring.

Erwin Davis, in March, 1859, recovered judgment against the Columbia and Stanislaus River Water Company, and on the ninth of May afterward, sold their ditch under execution. On the ninth November, 1859, the Tuolumne Redemption Company redeemed from Davis, it being assignee of three judgments rendered respectively June 29, July 14 (1858) and March 28, 1859. Davis, on the tenth December, 1859, paid to the Sheriff the amount paid by the Tuolumne Redemption Company on redeeming from him, with four per cent. in addition thereto, under the Act of March 28, 1859, for the purpose of redeeming the property. Davis claimed to redeem as assignee of two judgments rendered respectively July 5, 1859, and July 9, 1859. The company, during the month of November, 1859, had become the owners, by assignment, of several other judgments against the original judgment debtor, bearing date respectively March 11, 1859, March 26, 1859, March 28, 1859, and refused to receive the amount so tendered by Davis. They base their refusal on the ground that he could not redeem without paying the judgments under which they had redeemed, and also those subsequently assigned to them. The Sheriff having refused to give the plaintiffs a deed, they applied for a *mandamus*. This being refused by the District Court, this appeal is taken.

The correctness of the decision below depends upon the construction

34

and effect of the redemption laws. The Act of 1851 provides that a subsequent redemptioner may redeem from a prior one by paying "the sum paid in the last previous redemption with six per cent. thereon in addition, and the amount of any assessment or taxes which the said last previous redemptioner paid after the redemption by him with interest thereon, and the amount of any liens held by the said last redemptioner previous to his own interest." The Act of March 28th, 1859, is the same as the Act of 1851, except in a few particulars—among them, that instead of six per cent., *four* is substituted, and the clause in regard to prior liens just quoted is entirely omitted.

These judgments were assigned, and this purchase or redemption made, after the passage of the Act of 1859. That Act was evidently in substitution of the Act of 1851. It provided for a new rule of redemption and repealed the old rule. The right to redeem and the terms of the redemption, or in other words, the mode of asserting such right, are the creatures of statute. No man has the statutory right to redeem, but because it has been given by the law, and he can only exercise it in the way given by the law. The statute of 1851 gave the right to a judgment creditor, but the judgment creditor could not claim it except by virtue of the law. To avail himself of this privilege, he must fulfill the requirements prescribed by the Act under which he claims. If before he is a judgment creditor, the law be repealed, he could not have any claim to redeem; for the simple reason, that he would not belong to the class for which the Legislature furnished this remedy. When the plaintiff redeemed from Davis, the Legislature had passed an Act declaring that a redemption might be effected from him upon certain terms. We have said that he had this right to redeem only by virtue of the law which conceded it to him; but the law which made this concession could also prescribe the terms upon which it should be granted. The plaintiff was not bound to make the redemption. It was its own voluntary act; but if it chose to avail itself of the statutory privilege, it must take it with all the incidents and disabilities which the statute affixed. If the redemptioner purchases judgments after the act, and the statute does not give to the assignee of them the privilege of holding the amounts of these judgments, as a portion of the sum to be paid in order to effect a redemption by a subsequent redemptioner, he cannot, of course, complain. For it is his own fault, and not the fault of the law. It may be very true that a redemption is a contract, but like all other contracts, it must depend

upon the law for its validity.   The law in existence at the time of the contract, is the law which governs the contract.   The right to redeem land is no part of the contract of indebtedness.   It is a new and extraordinary privilege given by the statute.   It is a species of legislative contract; or, in more appropriate language, a provision is made by statute for a future contract, by pursuing which a purchase of land may be made.   But as this provision is only a matter *out of which rights may grow,* the provision may be repealed at any time before a party avails himself of it, without objection on his part.   In other words, the Legislature may give a particular privilege or a right to contract on certain terms or in certain circumstances, but it may repeal the provision, or deny the right, as a general rule, as fully and completely as it can give them; or it may alter the terms at its pleasure, subject only to this: that it cannot repeal or alter so as to affect those contracts *which have been made* during the existence of the act authorizing them.   But it may repeal or alter the provision of the act so as to affect those who have not yet availed themselves of the statutory privilege, or at all events, who are not yet in a condition to so avail themselves.   The plaintiffs here had not at the time of this repeal or alteration so availed themselves, and therefore, the law as to them might be repealed or altered; the effect of this alteration not being to divest any right they had, but only to prevent them from having a right, which, before that time, they *might* have had.   The following authorities sustain these views: 1 Hill, 324; 6 Wend. 526; Smith's Com. sec. 768; 9 Ala. 715; 1 Cowen, 501.

It has been seen that the judgment of Davis was recovered before the passage of the Act of the twenty-eighth of March, 1859, but the sale under the judgment was on the ninth of May subsequent; and of course, the redemption by the plaintiffs from Davis was also subsequent, though that redemption was affected by judgments assigned to plaintiff subsequently to March 28th, but rendered previously to that date. After this redemption by plaintiff, and after the passage of the Act of 1859, the plaintiff became the assignee of several judgments against the common debtor, and now claims to hold these as liens upon the property redeemed by him, and insists that the amount of them constitutes a portion of the redemption money which a subsequent redemptioner must pay to redeem the property.   Let us inquire into the rights of the judgment creditor at the time of the judgment.   He had a right to subject the property to sale for the payment of his debt.   He had

also the right to redeem the property, when sold under certain circumstances. The defendant had also certain rights of redeeming the property after a sale, and his creditors had similar rights. But these rights were purely statutory; they were given in order to prevent a sacrifice of the property at forced sale, not as a part of the contract between the parties, but to prevent an abuse of the remedy given by the law to secure a performance of its terms. These regulations were mere provisions of sale, governing the course of the process and its effect. The contract of indebtedness is not touched by these provisions; it stands as it stood before—a valid obligation to pay money, with the sanctions furnished by the law for its enforcement. A sale without any right of redemption is a valid and sufficient remedy for the enforcement of the contract, and an act denying a right of sale would probably be such a vital assault upon the obligation as practically to destroy it, and therefore be unconstitutional. But a repeal of a right of redemption—in other words, an act making a sale absolute instead of conditional, would not impair the contract. A debtor in default has no vested right to have his property sold in any particular way; and third persons, not parties to the contract, have no vested right to purchase the property of a common debtor sold at the instance of another creditor. Whatever rights of the kind exist, pertain solely to the remedy, and exist solely by statute, and the Legislature may repeal them at any time before they have been availed of by the parties entitled. To state the proposition in different form: the Legislature has no right to alter the terms of a contract already in existence; it has a right to alter the remedy.

The contract in this case was the engagement to pay money; the remedy was a forced sale of the property of the debtor; the mode of the sale was a matter of legislative discretion. At the time of the sale by Davis, the right was given to redeem the property sold, according to certain terms already stated, viz: those of the Act of 1859; the sale took place when the act was in force. Davis bought at the sale. The plaintiff had the right to redeem if he were a judgment creditor, or the assignee of one. He was such, and did redeem. The mere fact that the judgments of plaintiff were recovered before the passage of the Act of 1859, did not vest in the holders of them a right to redeem from a sale made after the passage of the Act of 1859, upon any different terms than those prescribed by that act. If this right to redeem were an incident to the judgment, under the Act of 1851, it was a por-

tion of the remedy which might be taken away by the Legislature at any time before the right had become vested by the party availing himself of it.   Under the Act of 1851, the plaintiff could become the assignee of judgments, and hold the property free from any right of redemption until those judgments were paid him; but under the Act of 1859 he could not, and the sale was made under the Act of 1859 by Davis, and these last judgments were assigned to plaintiff after this last act.   When Davis comes to redeem, the Act of 1859 is in force, and prescribes the terms; and it was in force when the plaintiff redeemed from Davis.   The plaintiff is driven then to maintain this proposition: That if, at the time A has a judgment against B, a law is in force authorizing him to redeem the property of B, which may be subsequently sold on certain terms, that law cannot be repealed or the terms altered so as to affect him.   But the answer is, that this right is not in the nature of a contract, but only of the remedy; and this privilege of redemption is only one of the means or securities furnished by the law for executing the contract.

When the plaintiff redeemed this property from Davis, it was subject to be redeemed again by Davis upon certain terms; those terms being prescribed by the Act of 1859.   No loss accrued to the plaintiff in consequence of this redemption.   When the plaintiff purchased in these assigned judgments, he took them without any right to add the amount to the sum to be paid for redemption by Davis.   If those judgments were liens upon the property, or the remaining interest of the defendant in execution, they might have been enforced in the usual mode; and we do not decide, for the question is not now before us, that they cannot now be enforced.   We see no force in the argument that the Act of 1859 does not operate upon this case.   The Act of 1859 was evidently designed to be exclusive and in substitution of the Act of 1851.   They cannot both stand together.   Each constituted an entire system.   Nor do we see how it can be said that the principle applies, which declares that laws should not have a retroactive effect.   The effect of the Act of 1859 is not retrospective when applied to this case, for, as we have said, the contracts contemplated by the Act of 1859 were future redemptions, and not the less in the future because they might grow out of sales by the officer, under judgments already in existence.   Nor do we see that the fact that judgments are rendered upon mortgages in existence before the passage of the Act of 1859, makes any difference.

Tuolumne Redemption Co. *v.* Sedgwick.

Some sharp criticism has been expended upon the Act of 1859, and certainly that act seems to us not a little imperfect and faulty. But we cannot amend legislative enactments by making them conform to our own ideas of justice or propriety. We are bound to give effect to them whenever we can discover their meaning, when no constitutional objection stands in the way; and as we have often said, the act must be clearly unconstitutional before we can hold it a nullity. We are unable to see that this act is of this character. We express no opinion upon the rights of these parties, further than as expressly decided, leaving other questions open until they are directly presented.

Judgment affirmed.

FIELD, C. J.—The sale of the Columbia and Stanislaus River Water Company ditch was made under three decrees, rendered on the twenty-sixth and twenty-eighth of March, 1859, upon the foreclosure of three mortgages, dated on the twenty-fourth of July, 1857, the twenty-seventh of January, 1858, and the twenty-fifth of May, 1858. The redemption from the sale was made by the plaintiffs, as assignees of two money judgments, rendered June 29th, and July 14th, 1858, and upon a decree rendered March 28th, 1859, upon the foreclosure of a mortgage dated May 28th, 1858. No question is raised upon the validity of this redemption. The money tendered was accepted, and a certificate to that effect given by the Sheriff. The judgments subsequently assigned to the plaintiffs, bearing date on the eleventh, the twenty-sixth and twenty-eighth of March, and the twenty-sixth of November, 1859, were rendered upon the foreclosure of mortgages which existed as liens upon the property previous to the decrees upon which the sale was had, and as understood from the statement of counsel on the argument, in answer to a question put by the Court, previous to the institution of the suits in which those decrees were rendered. The owners of these several mortgages were not, so far as the record discloses, made parties to those suits. This being the case, the owners were not, in any respect, affected by the decrees, or the sales thereunder. They still retain the equitable right to redeem the premises—a right distinct from that given by the statute. "The statutory right in some instances," as this Court said in *Whitney* v. *Higgins*, (10 Cal. 554) "exists where there is no equity, and in other instances, in connection with the equitable right. Parties to the suit in which the judgment is rendered under which the sale is made, are restricted to the six months given by statute, for they

Tuolumne Redemption Co. *v.* Sedgwick.

have had their day in Court, and their rights after decree depend entirely upon the statute. Parties acquiring interests pending suits to enforce previously existing liens, taking their interests in subordination to any decree which may be rendered, have no equity, and are confined to the rights given by the statute, and so, as a consequence, are those whose interests are acquired after judgment docketed, or sale made; but parties obtaining interests subsequent to the plaintiff, and before suit brought, who are not made parties to such suit, possess both the equitable and the statutory right. They may redeem under the statute, or they may file their bill in equity." (See also *Montgomery* v. *Tutt,* 11 Cal.)

The plaintiffs have not lost their equitable right, even as to the decree and judgments under which they redeem, from the fact that they also asserted their statutory right—the subsequent proceeding taken by Davis in redeeming from their redemption, leaving their claims unsatisfied. These observations are assented to by Mr. Justice Baldwin, and are made in answer to the suggestion of the appellants as to the hardship which must result in this particular case, if the Act of 1859 be held to apply to sales upon judgments existing at the date of its passage.

I concur in the judgment of affirmance.

On petition for rehearing, BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The petition for a rehearing questions our conclusions in this important case, and asks a reconsideration of them. We have reviewed the argument in the light of the cases cited from the Supreme Court of the United States. We agree with the counsel, that the decisions of that high tribunal upon the construction and effect of the Federal Constitution are of authoritative obligation upon us, and if such construction be as contended for by the appellant, we would unhesitatingly follow it. But the question is, whether the Supreme Court has decided the principle in this case contrary to the rule we have laid down. We think it has not. The appellant insists that the fact that the plaintiff below held, as assignee, the mortgages assigned to him after the passage of the Act of 1859, authorized him to hold these mortgages as debt, the amount of which was to be added into the sum required of Davis in order to redeem the premises. These mortgages passed into judgments, and the judgments were, with one exception, a lien prior to the

Act of 1859.  But, as said before, the judgments on these mortgages were not assigned to the Tuolumne Company until after the passage of the Act of 1859.  We showed, in this opinion, that this act, as to the mode and terms of redemption, is in substitution of the Act of 1851.  It would be difficult to see how any statutory right of redemption existed under the Act of 1851, after the passage of the Act of 1859, if this act was in substitution of the first act, and a repeal of it as to the mode and terms of redemption.  The plaintiff, then, comes to redeem under the Act of 1859, and must abide by the provisions of that act.  But he claims that he, as assignee of a mortgage, has the rights of the original mortgagee at the time of the mortgage and since ; that these rights are governed by the law in force at the date of the mortgage, and this law is a part of the mortgage contract, and therefore it was not competent for the Legislature to change this law to his prejudice, since that would be impairing the obligation of the contract ; and the two cases in the Supreme Court of the United States (1 How. 311, and 2 Id. 609) which have given rise to much discussion, are cited.  But the answer to this view is, that the statute gives all the rights to redeem upon which the plaintiff, *in the mode he has adopted,* can claim ; that the Statute of 1859 gives no rights to redemptioner as assignee—that *is to say,* no right to buy in a judgment or mortgage, and hold the amount of it as a part of the sum required to be paid by a subsequent redemptioner.  The question, in this aspect of it, is not as to the right of the *mortgagee under the mortgage, but it is as to the right of the assignee as a redemptioner under an act which does not allow* him to take an assignment of a debt, and hold it as a part of the sum to be paid by a subsequent redemptioner in order to redeem from him.

It is said that the plaintiff was a mortgagee at and before the date of the Act of 1858, and therefore, that the contract of mortgage, taken in connection with the law in force at the time, gave him the right to buy in judgments after he had redeemed, and to hold these judgments as a part of the sum to be paid by a subsequent redemptioner.  It is not easy to see how this claim can be maintained.  There might be more force in this argument, if the Tuolumne Redemption Company had redeemed under the Act of 1851.  But it did not.  If our general reasoning is correct in the former opinion, it follows that this remedial law no more applies to a contract of mortgage than a contract of judgment.  Both of these kinds of contracts are protected alike under the

Constitution. But the whole aim of our opinion was to show that this matter of redemption was a new contract, not connected with the original contract, but created or authorized by statute as a part of the remedy. It may be true, as in the case of *Bronson* v. *Kinsie*, (1 How.) that if the contract of mortgage provided its own remedy for a breach of its condition, as by absolute sale after a decree of foreclosure, that an act subsequently passed giving another right of redemption and postponing the sale, would violate the Constitution. But why? Because the contract in force at the time would be in this part of it violated and set aside. But this is a very different question from that here. Here, there is nothing taking away any present remedy from the mortgagee, or right to subject the property, as the contract provides, but merely a provision declaring that persons answering to a certain description—mortgagees, for example—may redeem; but it is competent for the Legislature to repeal this provision at any time, before a party is entitled to claim it. In other words, if the act were that a mortgagee may become assignee of another mortgage, and may, as such assignee, redeem property sold under judgment, we suppose the Legislature might repeal the provision at any time before he was such assignee.

But at all events, however difficult the question and unsatisfactory the distinction and reasonings upon this subject, one thing is certain: the statute is clear, and its unconstitutionality is not, and in such cases we cannot hold the act void.

But we think this case may be put on other grounds. The plaintiff only claims in the petition that its title inures by virtue of the assignment to it *of these judgments*. It makes no claim as mortgagee or as assignee of a mortgagee. By the statute, it might have redeemed as judgment creditor or as mortgagee. But this statute is not a substitute for his right to redeem as mortgagee by the general principles of equity applicable to mortgages. If it was made a party to the suit, it might any time before foreclosure have redeemed, and under the statute it had the right to redeem, as such junior mortgagee, upon the terms allowed to other redemptioners. If not made a party, the mortgagee is not bound at all by the decree of foreclosure, and may file his bill to redeem at any time within the statutory bar. This statutory provision, then, is in aid of the remedy and rights given the mortgagee by the general law, and is purely a remedial provision which, as to this plaintiff, the Legislature had a right to make and alter as it has done.

Rehearing denied.