## Case No. 2,114.

BUFORD et al. v. HENZIER et al.

[8 Biss. 177;[1] 5 Cin. Law Bul. 56.]

Circuit Court, D. Indiana. Feb., 1878.

EXECUTION—REDEMPTION FROM SHERIFF'S SALE—
DRAFT ACCEPTED AS MONEY.

If the amount necessary to redeem from a sheriff's sale is paid to the proper officer in a bank draft, which is accepted by the officer but not actually collected until after the expiration of the time for redemption, the redemption is nevertheless complete. It is not essential that the payment be made in currency unless so required by the officer.

In equity. This was a suit [by B. D. Buford and others] to set aside and cancel a sheriff's deed, issued to the defendant, John C. Henzier, as the purchaser at a certain execution sale of real estate, on the ground that complainants were junior judgment creditors and had redeemed the property from the sale within one year, under the Indiana statute.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Claypool, Newcomb & Ketcham, G. F. Hunt, and Herod & Winter, for complainants.

Baker, Hord & Hendricks, for defendants.

GRESHAM, District Judge. Jacob Gorman and B. D. Buford & Co. recovered judgments against Christopher Klippell in the Jackson circuit court of Indiana. To satisfy the Gorman judgment, which was senior, certain real estate, the property of Klippell, was sold on execution by the sheriff of Jackson county to John C. Henzier. The statute of Indiana allows the judgment defendant and junior lienholders to redeem real estate from sales on execution by paying the purchaser or clerk of the court, for the purchaser's use, the amount of the purchase money, with interest thereon at ten per cent. per annum, within one year from the day of sale.

Charles F. Hunt, agent of B. D. Buford & Co., bought from the Indiana Banking Company, of Indianapolis, a sight draft for $946 on the First National Bank of Cincinnati, payable to Hunt's order. With this draft, which amounted to a fraction more than the purchase money and accrued interest, Hunt proceeded to Brownstown, the county seat of Jackson county, where he indorsed and delivered the draft to the clerk on the day before the expiration of the period of redemption. The clerk received the draft as money, and receipted for it as such, in full redemption of the real estate from the sale. Both Hunt and the clerk acted in the utmost good faith. Brownstown and Seymour are twelve miles apart on the Ohio and Mississippi Railroad, and there being no bank at Brownstown, the clerk kept an account with the bank at Seymour, where he sent the draft, after having kept it in his possession at Brownstown for thirty days. The merchants of Brownstown made their purchases mainly at Cincinnati. After the expiration of the period of redemption, Henzier demanded a deed on the ground that nothing but the payment of money was effectual to redeem from sheriff's sales. It is not insisted that the Indiana Banking Company did not have funds on deposit with the First National Bank of Cincinnati when it sold the draft to Hunt, nor that the latter bank was not then and thereafter able and willing to pay the draft in lawful money. There being no bank at Brownstown, and the business men of that place being in commercial relations with Cincinnati, it was safer and more convenient for the clerk to hold exchange on Cincinnati than money or treasury notes.

I think it clear from the evidence that if the clerk had preferred treasury notes, Hunt could and would have procured them without trouble or delay by selling the draft at Brownstown. The draft represented $946, which Hunt had on deposit in the bank at Cincinnati, and the assignment and delivery

of the draft to the clerk was a payment to him of that money. That is the usual mode of payment among business men. It was not necessary that Hunt should actually count down and pay over to the clerk the amount of money necessary to redeem from the sale. If there had been a bank in Brownstown, and Hunt having on deposit therein money enough to redeem from the sale, had given his check to the clerk for the required amount, and this had been done for the mutual convenience of Hunt and the clerk, Henzier's right to the real estate under the sheriff's sale would have been extinguished.

Between such a transaction and Hunt's indorsement and delivery of the draft to the clerk, I can see no difference in reason. The fact that the drawee of the draft was eighty-five miles distant when it was indorsed and delivered to the clerk would make no difference. The draft, in commercial circles at least, was the equivalent of money, and being more convenient, the clerk preferred it to money. The clerk was able and willing to pay to Henzier the amount of the draft in treasury notes if he had demanded them. Jessup v. Carey, 61 Ind. 584; Webb v. Watson, 18 Iowa, 537; Carter v. Lewis, 27 Mich. 241. Decree in accordance with the prayer of bill.