[L. A. No. 1026.   Department Two.—November 21, 1902.]

# JOHN D. HOOKER, Appellant, v. JOHN BURR et al., Respondents.

REDEMPTION—JUDGMENT LIEN—DEED INTENDED AS MORTGAGE.—The right of redemption under the lien of a judgment recovered against a mortgagor is not affected by a deed executed by the mortgagor before the recovery of the judgment, where it appears that such deed was intended as a mortgage to secure a debt and further advances.

ID.—MODE OF REDEMPTION—GOLD-COIN JUDGMENT—CERTIFIED CHECK —PAYMENT IN COIN—AGENCY FOR REDEMPTIONER.—Where the redemptioner had in his possession, and offered to pay, gold coin, as required by the judgment under which the sale was made, but, upon request of the sheriff for a certified check, the gold coin was deposited in bank by the redemptioner's agent, and a certified check, taken in the agent's name, was delivered to and accepted by the sheriff as and for the required redemption money, and the check was subsequently cashed by the sheriff in gold coin, it cannot be objected by the purchaser at the sale, from whom the redemption was made, that the check was that of the agent, and not of the redemptioner, and was not by its terms payable in gold coin.

ID.—AUTHORITY OF SHERIFF TO RECEIVE CHECK—RELATION OF PAYMENT TO DELIVERY.—The sheriff is the agent of the purchaser for the purpose of receiving payment of the redemption money, and, though his agency is limited, he has authority, in a *bona fide* transaction, to accept a check as conditional payment, the cashing of which relates, according to the custom of commercial transactions, to the date of its delivery; and the redemption is effectuated if the check is paid in the proper kind of money, especially where the proper kind and amount of money was ready for delivery in the first instance, and the check was given in lieu thereof, at the sheriff's request, and was properly cashed by him.

ID.—AMOUNT OF REDEMPTION—PERCENTAGE—AMENDMENT OF CODE— PRIOR MORTGAGE—OBLIGATION OF CONTRACT.—The amendment of the Code changing the percentage to be paid upon redemption from an execution sale, from two per cent per month to one per cent applies to sales made after its passage; and where the purchase at a foreclosure sale was made subsequent to such amendment, the fact that the mortgage under which the sale was made was executed prior to the amendment is immaterial.   The rights of the mortgagor and mortgagee are not adversely affected by the amendment; and it does not impair the obligation of the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, for Appellant.

E. C. Bower, and Anderson & Anderson, for Respondents.

HENSHAW, J.—Plaintiff Hooker was the purchaser at foreclosure sale of land which had been mortgaged by the Spencers. Defendant Rhodes, by assignment, had become the owner of a judgment which one Nicholls had recovered against Anna T. Spencer (in whom the legal title to the mortgaged property stood). Nicholls's judgment was docketed in October, 1897. The mortgaged property was sold upon the 13th of June, 1898. Rhodes, as substituted judgment creditor under the Nicholls judgment, claimed his rights as redemptioner, and, by payment to the sheriff, effected a redemption of the mortgaged property, in due time receiving the sheriff's deed therefor. Thereafter Hooker commenced this action, making defendants Rhodes and the two sheriffs of Los Angeles County, the one with whom Rhodes's redemption had been effected, the other by whom the deed had been executed.

The facts are not in serious dispute. The controversies between the parties turn rather upon the legal consequences and effects of their admitted acts and transactions. Plaintiff for relief asked the cancellation of the deed made to Rhodes, that Rhodes be restrained from interfering with, or disposing of, the property, and that the sheriff be compelled to make proper conveyance to him. The court found that the mortgagor Spencer at the time of the docketing of the Nicholls judgment retained and had an interest in the property; that Rhodes was a redemptioner, and had duly redeemed, and gave judgment in accordance with these findings.

Appellant's contention is, that the Nicholls judgment never became a lien upon the property, because upon the 10th of June, 1897, Mrs. Spencer had conveyed all her right, title, and interest in and to the property to Orange E. Dickey. Orange E. Dickey upon the same day conveyed the property to Charles J. Shepherd. It is contended by appellant that these deeds were absolute and stripped Mrs. Spencer of the last vestige of title to the property in controversy. The court, however, found that at the date of the execution of the deeds,

and thereafter, Mrs. Spencer was indebted to Charles J. Shepherd in the sum of about $2,500, and that the deed to Dickey (proved to have been without consideration, excepting such as flowed to his grantee Shepherd) and the deed from Dickey to Shepherd were executed for the purpose of, and intended as, security to Charles J. Shepherd for the debt which Anna Spencer then owed him, and for future advances contemplated to be made to her and for her account, and that these deeds did not divest Anna Spencer of her title to the property. This finding, we think, is abundantly supported by the evidence. Mrs. Spencer had become involved,—she owed Shepherd; she experienced great difficulty by reason of lawsuits in retaining the property which she then owned; she was in debt and in litigation, and finally, through her attorney, as he testified, "the scheme was concocted" and carried into effect by which the deeds in question were made. Her attorney thus testified: "The purpose of making the deed was, that the property should be put in the name of Mr. Shepherd for the purpose of taking it and securing all the moneys that he had advanced, and if it became necessary for him to mortgage it, to do so, and that there should be no agreement back of it that anybody could dig up, and—for the purpose of interfering—we had been handicapped in every way wherever we had gone to arrange for money, we had been told inside of twenty-four hours that somebody had been there making dire threats about what they were going to do with reference to ripping up any arrangements that we had made, because of the fact that Mrs. Spencer was involved." The alternative conclusion is forced therefore, from this and other like evidence, that the deed was absolutely void, as being in fraud of the creditors, or else that it was a legitimate transaction, by way of mortgage, to secure Shepherd in his pre-existing debt, and in such other advances as he might make in the preservation of Mrs. Spencer's property. The court adopted the latter view, and, without elaborating upon the additional evidence in support of it, it is sufficient to say that the finding is fully sustained.

The effect of this finding is to establish Rhodes's position as a recognized redemptioner, and the remaining questions touch the matter of his redemption. The pertinent facts are the following: About the twelfth day of December, 1898,

Rhodes called up Hooker on the telephone and told him that he intended to redeem the Broadway property bought by him, and made an engagement to meet him at his place of business that day at 2 o'clock in the afternoon. Rhodes went to Hooker's place, and Hooker failed to meet his engagement. That evening, about 6 o'clock, Rhodes, accompanied by Mr. Anderson, drove to Hooker's residence, carried with him the notice required by law to make the redemption, and also carried $10,500 in gold coin, to pay Hooker the necessary amount to effect the redemption. The servant who answered the bell said that Mr. Hooker was in. Mr. Rhodes and Mr. Anderson requested her to tell Mr. Hooker that they wished to see him. Upon her return she said that Mr. Hooker was not in. They placed the money that night in a drawer of the First National Bank for safe-keeping, but did not make a deposit of it. The next morning Clark and Rhodes went to the sheriff's office, saw the sheriff, told him that Rhodes was going to make a redemption, stated that Rhodes had the gold coin on hand with which to make the payment, and they would bring up the gold coin from the bank for that purpose. The sheriff responded that he would rather have a certified check than the money, and to bring up a certified check. The $10,500 in gold was then placed in the First National Bank, and Mr. Clark took out his certified check for $10,070 and delivered it to the sheriff for Rhodes in redemption payment. The sheriff accepted the check, and upon the same day notified Mr. Hooker that he had his money upon the redemption of the property. Hooker declined to accept the money from the sheriff. The sheriff, in fact, had not cashed the check, nor did he cash it until some eleven months later, after this suit was commenced. The check was then actually cashed, and the money upon it received in gold coin. The check could have been cashed for gold coin upon any banking-day prior thereto. Mr. Hooker did not know that the redemption had been effected by check until after the commencement of his action, when his pleading was amended to cover this point. He did, however, believe that the money had been paid, and had, as has been stated, refused to accept it. At the time this mortgage was executed, to make redemption it was necessary to pay the amount of the purchase money, with two per cent per month up to the time of redemption. In 1897 the code

provision was changed, and it now requires from the redemp-
tioner the purchase money with one per cent per month from
the date of the sale. (Code Civ. Proc., sec. 702.) It is ad-
mitted that the amount actually paid, $10,070, was the
amount of the purchase money, with one per cent per month
added.

Upon these facts various propositions are advanced and
argued.

1. That the check was the check of Clark, and that Clark
was admittedly not a redemptioner, and that therefore there
was no redemption. But Clark, it affirmatively appears, was
acting as the agent of Rhodes and had declared himself to be
so acting, and when the sheriff accepted the check he accepted
it on behalf of Rhodes, and for the purpose of effecting the
Rhodes redemption. If under all the circumstances of the
case, which are to be considered hereinafter, the reception of
this check amounted to payment, in proper amount and of
proper money, appellant may not here be heard to complain
that the check was not actually the check of Rhodes.

2. The same may be said of the further objection, that the
judgment called for satisfaction in gold coin of the United
States, and that the check was not in terms made payable in
gold coin. But the check in fact was paid with gold coin,
and if in other respects the transaction was regular, appellant
has received precisely what the law entitled him to receive,
and has not been injured.

3. It is said that the tender and acceptance of the check
constituted no payment whatsoever. Herein reliance is placed
upon the case of *Thorne* v. *San Francisco, (People* v. *Hays,)*
4 Cal. 127, where redemption was effected by the mayor of
San Francisco, acting on behalf of the city, by giving to the
sheriff his personal certified check. The check was received
and the next day was cashed. Upon this it was said: "Such
pretended payment was made by delivering private checks
of such individuals to the sheriff. This was no payment
under our laws. The constitution forbids it. This is em-
phatically a hard-money state." But *Thorne* v. *San Francisco*
was decided by a divided court, and since then has been dis-
tinctly overruled upon other matters, and upon this particular
question has never been followed. The later doctrine and

rule of decisions in cases such as this, as will be seen from the authorities hereinafter cited, is exactly the opposite.

The sheriff is made the agent of the purchaser for the purpose of receiving payment. It is true that his agency is a limited agency, and that his act does not bind the purchaser upon any matters outside of the payment, and only upon those when, in compliance with the law, payment in money sufficient in amount and kind has been made. In general mercantile and commercial transactions a check, after all, is but a convenient form of transferring money, and operates either as payment absolute or payment conditional, as the parties themselves intend. (*Savings and Loan Society* v. *Burnett,* 106 Cal. 514; *Comptoir etc.* v. *Dresbach,* 78 Cal. 15.) But in all such transactions where a check is received as conditional payment the payment becomes absolute and relates to the date of the delivery of the check when its recipient actually cashes it. There is, of course, a broad distinction between tender and absolute or conditional payment. The redemptioner might tender anything he chose by way of payment to the purchaser, and the purchaser might accept the money or article tendered, or the purchaser might waive any and every objection to the tender,—its time, amount, nature,—and if he did so the tender, however inadequate in fact, would thus become sufficient in law. Upon the other hand, the purchaser might reject a tendered check, simple or certified, and his rejection would be valid, because a tender made by check is not legal and cannot, therefore, be enforced. The position of the sheriff, acting under his limited agency, is, however, markedly different. He is the agent merely for the purpose of receiving payment, and that payment, to bind his principal, must be made in the amount and kind of money to which the principal is entitled. He too, of course, could refuse the tender of a check; but if in a *bona fide* transaction he accepts a check as conditional payment, and that check is regularly paid, his principal has suffered no detriment, and the transaction under modern business methods has come to be regarded as perfectly legitimate and quite within the scope of the agent's authority. Thus in *Jessup* v. *Carey,* 61 Ind. 584, Walton gave his check for the amount of redemption to the clerk who was authorized by statute to receive money upon redemption. The clerk

deposited the check, and the contention was made there, as here, that the check was not payment, and that there had been no redemption. But the court said: "It was not an improper nor an illegal mode of payment, for the appellant, Walton, gave his check on a bank in this state for the amount of the redemption money to the clerk of the court, who was willing to receive the check as so much money. If the appellant, Walton, had the money to his credit in bank subject to his check, and the clerk of the court was willing to and did receive his check as so much money, the transaction was fully sanctioned by the ordinary usages of business, and was certainly not an illegal payment, if it culminated in the actual payment of the amount of the check upon presentation therefor." In *Webb* v. *Watson,* 18 Iowa, 537, the fact that the mere presentation of the check does not constitute absolute payment, but is conditional merely, becoming absolute upon the cashing of the check, is pointed out, and it is added: "And if in good faith the defendant pays and the clerk receives the ordinary banker's check, and especially of a banker resident in the place where the business is transacted, upon which he realizes the money when demanded, though after the expiration of the time, having the same ready to pay to the holder of the certificate promptly and without trouble to him, it seems to us that it would not be difficult upon principle to uphold the redemption, and to hold that the creditor or purchaser was bound to take the money and surrender his claim to the land." In *Carter* v. *Lewis,* 27 Mich. 241, the *syllabus* accurately states the opinion and decision of the court in the following language: "While the register of deeds has no authority under the statute to receive anything but money in redemption of a foreclosed mortgage, yet when one desiring to redeem goes to the register prepared to pay the money and offers to pay it, and the register, knowing the amount, but being too busy to count the money, requests him to place the money in a bank and give a check for the amount, and he does so, and the register after the expiration of the time for redemption receives for the check a certificate of deposit in his own name for the amount, it cannot be said that this is not such a payment of the money to the register as operates under the statute to redeem the mortgage." And so likewise the United States circuit court, in *Buford* v. *Hen-*

*zier,* 8 Biss. 177, held, under similar facts, that if the amount necessary to redeem from a sheriff's sale is paid to the proper officer in a bank-draft, which is accepted by the officer, but not actually collected until after the expiration of the time for redemption, the redemption is nevertheless complete. It is not essential that the payment be made in money, unless so required by the officer.

In the case at bar it was wholly for the convenience and at the request of the sheriff that the certified check was substituted for the gold coin which was offered to be paid, and in seasonable time the check was cashed in gold coin and the actual money taken into the custody of the sheriff. The redemption in this respect was certainly sufficient.

4. It is next contended that the redemption was insufficient for the amount; that the law at the time of the making of the mortgage entered into and became a part of the contract; that by that law the redemptioner was required to pay two per cent per month in addition to the purchase money, while it is an admitted fact in this case that but one per cent was paid. In brief, it is contended that to permit section 702 of the Code of Civil Procedure, as amended in 1897, to operate upon the contract is to impair its obligation. Herein especial reliance is had upon the case of *Barnitz* v. *Beverley,* 163 U. S. 118, which is said to be conclusive upon the question. In the earlier case of *Connecticut M. L. I. Co.* v. *Cushman,* 108 U. S. 51, that same august tribunal, having under consideration a case identical in principle to the one here in question, wherein the rights of the purchaser were involved, held that a law passed subsequent to the mortgage, and reducing the interest to be paid to a purchaser at such sale, was operative and did not interfere with the rights of the purchaser, whose contract did not exist until the time of the sale, and was governed by the laws in force at such time. Much nice reasoning is indulged in here to show that the principle declared in the Cushman case has been overruled in the later case upon which appellant relies. But upon that question the supreme court of the United States has itself spoken in *Barnitz* v. *Beverley,* and has said: "The case of *Connecticut M. L. I. Co.* v. *Cushman,* 108 U. S. 51, does not collide with the previous and subsequent cases. There the new statute did not lessen the duty of the mortgagor to pay what he had contracted to pay,

nor affect the time of the payment, nor affect any remedy which the mortgagee had by existing law for the enforcement of his contract.'' This determination of the supreme court of the United States upon one of its own decisions is, of course, absolutely binding upon this court. The essential distinction seems to be, that if the party complaining of the operation of the law is himself not injured by it, if the obligations of *his* contract are not impaired, he cannot be heard to complain, nor will the law be held as to him to violate any of his rights. It may be added that since the decision in the case of *Tuolumne Redemption Co.* v. *Sedgwick,* 15 Cal. 515, where this question first arose with us, and where the same conclusion was reached and expressed as by the United States supreme court in the Cushman case, the rule in this state has always been the contrary of that contended for by appellant.

This concludes a review of the principal points argued upon these appeals. Certain errors of the trial court in the admission and rejection of evidence are also presented. They have been examined, but we do not find that in any of them appellant has suffered injury.

The judgment and order appealed from are therefore affirmed.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.