[Civ. No. 4526.   Second Appellate District. Division Two.—April 27, 1927.]

CALIFORNIA STEARNS COMPANY (a Corporation), Appellant, v. A. W. TREADWELL et al., Respondents.

[1] AGENCY—SALE OF AUTOMOBILE—ACCEPTANCE OF CHECK IN PAYMENT—CONTRACTS—ADOPTION BY PRINCIPAL.—In an action by an automobile company to recover the balance of the purchase price of an automobile sold to defendants, the acceptance by the company of a check for the initial payment, with knowledge of the contract to purchase made by defendants with its agent, constituted an adoption of the contract by plaintiff.

[2] ID.—RIGHT OF AGENT TO RECEIVE PAYMENT—EVIDENCE.—In such action, the evidence was sufficient to show that the salesman, who alone dealt with defendants upon terms arranged by him and accepted by plaintiff, was the company's agent to receive payment and not merely its ostensible agent.

[3] ID.—CAPACITY OF AGENT—PRESUMPTIONS.—In such action, defendants were entitled to assume that the salesman, as agent, possessed the usual powers incident to the capacity in which he was permitted to act and that they could make a valid payment into his hands.

[4] ID.—AUTHORITY OF AGENT—ACCEPTANCE OF MONEY.—The rule that an agent authorized to collect debts has no authority to accept anything but money applies mainly to the acceptance of notes, due-bills, or merchandise, offsetting the debt against an obligation of the agent to the debtor, special adjustments between the agent and the debtor, and the like.

[5] ID.—ACCEPTANCE OF CHECKS BY AGENT—BANKS AND BANKING—CUSTOM.—Whether an agent has power to accept a check in payment instead of cash is determined by whether the bank on which the check is drawn is so located that the check is acceptable under the usage of trade and the agent has reason to believe that the drawer is in good credit, so that the check will be honored in due course.

1.  See 1 Cal. Jur. 775.

2.  Agent's authority to receive payment for commodity which he is authorized to sell, note, 8 A. L. R. 203. See, also, 1 Cal. Jur. 721; 21 R. C. L. 867.

4.  See 1 Cal. Jur. 722.

5.  Authority of agent to receive check as payment of debt in absence of express instructions, note, 9 Ann. Cas. 1198. See, also, 21 R. C. L. 55, 869.

[6] SALES—CHECKS—DELIVERY TO AGENT—SUFFICIENCY OF PAYMENT. In an action by an automobile company to recover the balance of the purchase price of an automobile sold to defendants, a check for said balance drawn in good faith by one of the purchasers to the order of the salesman with whom he dealt and delivered to the salesman at the place of business of plaintiff, co-incidentally with the delivery of the car and paid in due course under section 3169 of the Code of Civil Procedure, constituted payment to plaintiff, under section 2326 of the Civil Code, though the salesman, upon cashing the check, absconded with the money.

[7] ID.—EVIDENCE—DECLARATIONS BY SELLER.—In such action, a declaration of the president of the plaintiff company that he told the salesman to take care of the purchaser when he came, made in the course of an investigation which the president was making in the interest of his company, was admissible in evidence.

(1) 2 C. J., p. 502, n. 17.   (2) 2 C. J., p. 954, n. 83.   (3) 2 C. J., p. 620, n. 61.   (4) 2 C. J., p. 627, n. 20.   (5) 2 C. J., p. 629, n. 39. (6) 2 C. J., p. 635, n. 15.   (7) 2 C. J., p. 942, n. 71.

APPEAL from a judgment of the Superior Court of San Diego County. W. P. Cary, Judge. Affirmed.

The facts are stated in the opinion of the court.

I. Henry Harris for Appellant.

Wright & McKee and Treadwell, Tompkins & Clark for Respondents.

JOHNSON, J., *pro tem.*—The legal question in this case is whether a check of $2,000, drawn in good faith by the purchaser of an automobile to the order of the salesman with whom he dealt and delivered to the salesman at the place of business of his employer, the vendor, coincidently with the delivery of the car to the purchaser, constitutes payment to the vendor, though the salesman, upon cashing the check, absconded with the money. The defendants were sued here for the sum of $2,000 as the balance of the unpaid purchase price, upon the theory that the check was not payment. There is no substantial dispute as to the facts; and the trial court, holding that the vendor must be deemed to have received payment in full, gave judgment in favor of the purchasers, who are the defendants here. From that

judgment this appeal is prosecuted by the plaintiff, who was the vendor.

[1]   Plaintiff is a corporation, and in 1922 was engaged in business in Los Angeles as the local distributor of the Stearns motor-car. On May 15, 1922, the defendant A. W. Treadwell, a practicing attorney residing in San Diego, visited plaintiff's establishment in Los Angeles with a view to purchasing a car. There he met, and was waited upon by, L. M. T. Romer, who had then been in plaintiff's employ for about two months and who is admitted to have been a salesman authorized to deal as such with customers. After discussing prices and spending some time examining with Romer the particular car which was later purchased, Treadwell mentioned that he had a car of the same make in San Diego which he would like to exchange in part payment; and Romer thereupon suggested that the exchange could probably be effected with the co-operation of the Campbell Machine Company, which had the Stearns agency in San Diego. Romer stated further that he himself was to be in San Diego in about ten days, and would then see what arrangement could be made for trading the old car and buying the new one from plaintiff. On May 25th Romer called upon Treadwell in San Diego, in company with George Campbell, of the Campbell Machine Company. At this conference Treadwell was specific in declaring that the purchase was to be from the Stearns agency in Los Angeles; and an arrangement was made whereby the price of the new car was fixed at $2,680, with $90 added for extras, and an allowance was to be made by plaintiff of $770 for the old car, which was to be taken by the Campbell Machine Company. In conformity with this understanding, one of plaintiff's order forms was signed by Treadwell for the new car therein described, at a total price of $2,770, of which $770 was to be paid by the allowance on the old car. This form contained a clause reading: "When accepted by the company, this order constitutes the entire agreement between parties." At the foot was also the notation, "No order valid until countersigned." Treadwell signed this form as purchaser, and there appears also, above Treadwell's name, the subscription, "California Stearns Co., by Romer Salesman." The order was never countersigned in any other way. The

absence of a written acceptance by an officer of the plaintiff is, however, unimportant. At the time the order was signed Treadwell delivered to Romer a check for $25, drawn on the United States National Bank of San Diego to the order of California Stearns Company. This was accepted as a partial payment by plaintiff on account of the purchase price and P. M. Reidy, the president of the California Stearns Company, testified that the contract made was brought to his attention at least two weeks before the delivery of the new car to the defendants, and that he knew of the initial payment and the arrangement about the old car. The acceptance and retention of the initial payment with such knowledge was therefore an adoption of the contract as made through Romer's agency; and this is conceded in appellant's brief.

Treadwell was expecting to be in Los Angeles on June 6th, and it was arranged between him and Romer that the new car should be delivered at that time. At about half-past 9 in the morning of the day so fixed Treadwell and his wife called at plaintiff's salesroom in Los Angeles, where they found Romer in attendance. The president, Mr. Reidy, was in San Francisco that day; but defendants were introduced by Romer to the shop foreman, and the car designated in the contract was brought out. After the addition of some small appliances by the foreman, Treadwell spent a couple of hours with Romer in studying details of operation, and about noontime Romer conducted Treadwell to a small room on the office floor above and there the latter drew his check. After starting to make the check payable to plaintiff, and writing the word "California," Treadwell inquired how the check should be drawn, whereupon Romer directed that it be made payable to himself. Accordingly, the check was drawn to the order of L. M. T. Romer, in the sum of $2,000, on the same bank as before; and immediately thereafter Romer, with the check in hand, stepped into the office of the cashier and in the presence of Treadwell dictated a report of the sale. In response to an inquiry of the cashier as to the name of the person to be registered as owner, Mrs. Treadwell was designated. After Romer and Treadwell had rejoined Mrs. Treadwell on the lower floor and she had signed the application blank, all three went together to the office of the state motor vehicle department, where the car was registered

in Mrs. Treadwell's name, the license issued and number plates obtained. Thereupon all returning to plaintiff's salesroom, the plates were affixed by one of the employees and Mr. and Mrs. Treadwell drove away in the car. The check to Romer's order was indorsed by him and others, and was duly paid on presentation; but Romer disappeared without accounting to plaintiff for any part of the money. Within a day or two after the completion of the sale plaintiff's president returned from San Francisco, and was informed by the cashier that Romer had concluded the transaction and had received payment from Treadwell, but that no money had come from Romer to the cashier. The president does not seem at the time to have had his confidence impaired by Romer's neglect. Mr. Reidy testified that he was busy with one thing and another, and let the matter rest for about two days before he began an investigation. After investigation and an ineffectual conference with Treadwell, this action was begun.

[2] Much of the argument in the briefs revolves about the theory of ostensible agency. There is, however, no ostensible agency shown by the evidence. It is contended by the appellant in argument that Romer was merely an "order-taker" and had no authority to receive any of the purchase money. But throughout the transaction, which began and ended at plaintiff's salesroom, the defendant dealt with no one but Romer and the terms Romer arranged were accepted by plaintiff. Furthermore, at the trial plaintiff's attorney made this admission of agency: "We state in our contract that the man Romer was our agent, we do not deny that, he just was a salesman, that is all." Moreover, Treadwell testified that in a conversation between himself and Reidy on June 26th the latter admitted that before he himself left for San Francisco he knew that Treadwell was to call for the car on June 6th, and said to Treadwell, "I told the man to take care of you when you came." This conversation was not denied by Reidy; and no other person being mentioned, presumably the man indicated was Romer. The contract calls for cash payment on delivery, and it must therefore have been contemplated that payment would be made to plaintiff through the person closing the sale.

[3] The case is thus not one of ostensible agency. It concerns itself with the character bestowed on the agent by

the principal. In his character as a salesman, designated and empowered to close the sale, defendants were entitled to assume that Romer possessed the usual powers incident to the capacity in which he was permitted to act. By section 2326 of the Civil Code a special agent to sell has authority to receive the price on delivery of the thing sold; and defendants had a right to assume that Romer could say and do for his principal those things fitting the character in which he was serving his employer. It would require boldness to maintain that one taking delivery of a car in the ordinary course of business at a distributor's salesroom, through an employee with whom the purchaser had openly negotiated, could not make a valid payment into the hands of the employee, but would have to go personally to the cashier's desk to pay the money directly to the cashier.

By the usages of trade, checks operate commercially as a convenient form of money payment, and are ordinarily accepted provisionally in place of money. (*Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 15 [20 Pac. 28]; *South San Francisco Pkg. Co.* v. *Jacobsen*, 183 Cal. 131, 134 [190 Pac. 628]; *National Bank of New Zealand* v. *Finn*, 81 Cal. App. 317.) And when a check is cashed by a recipient, the payment relates back to the time when the check was delivered. (*Hooker* v. *Burr*, 137 Cal. 663, 668 [99 Am. St. Rep. 17, 70 Pac. 778].) Plaintiff does not contend that Romer would not have had the power to deliver the car if the check handed him had been drawn to plaintiff's own order instead of Romer's. There can be no doubt of an agent's power to receive payment in the usual way; and speaking of an agent for collection, Judge Story, in section 202 of his work on Agency, says: "So, if payment is received in the usual manner of conducting the like business transactions, as by receiving a check on a bank from a person in good credit, who should become insolvent before the check could be duly presented; or by receiving the common currency of the country, which should afterwards become depreciated; in each of these cases the loss would be the loss of the principal, not that of the agent."

[4] The question reduces itself, then, to the inquiry whether the personal check delivered to Romer under the circumstances detailed was tantamount to cash payment to plaintiff itself.

Plaintiff cites cases holding that an agent authorized to collect debts owing to his principal has no authority to accept anything but money. This is a well-established rule; but the application given to it is confined mainly to the inhibition of the acceptance by the agent of notes, due-bills, or merchandise, the offsetting of the debt against an obligation of the agent to the debtor, special adjustments between the agent and the debtor, or the like. No case directly in point here has been cited either by appellant or respondent; and we ourselves have been able to find but few possessing a resemblance or analogy to the case under review. One, however, worthy of attention is almost a brother to this action. In *Potter* v. *Sager*, 184 App. Div. 327 [171 N. Y. Supp. 438] (affirmed in 228 N. Y. 526 [126 N. E. 920]), plaintiff, who was the mortgagee under certain mortgages of real property in Rochester County, New York, had had her business transacted for several years through a resident agent named Sherwood. He had regularly accounted for collections both of principal and of interest; but a time came when he failed to account for two payments collected from the defendants in separate checks, each made payable to Sherwood personally and cashed by him. The question there, as here, was whether the checks constituted payments to the principal, when actually paid to the holder by the bank on which they were drawn. The court held that the principal was bound by the payments so made to the agent, and its reasoning is as follows:

"Where a person is an agent, with authority from his principal to collect principal and interest, the general rule is that a payment by a debtor to such agent, to constitute a good payment, must be made in cash. The reason for this rule is that a payment in any other medium is not as good as cash—is not the exact equivalent of cash. Thus it has been held that the giving of a note, mortgage, postdated check, property, etc., does not constitute a payment, because the acceptance of those things by the agent exceeds his authority, and constitutes the exercise of a discretion by the agent not vested in him by his principal.

"It would seem, however, that this court should take judicial notice of the fact that checks and drafts are usual and ordinary means of transacting business and transferring

money in all business transactions; that, where an agent is given authority to collect money, the authority granted implies that he shall do so in the usual and ordinary way, and, where a check is given by the debtor, not postdated and payable at a bank in the same city, the giving of such check, payable to the agent, constitutes payment from the time that such check is cashed in due course. 'Power to employ all the usual and necessary means to execute the authority with effect is an incident of every contract of agency.' Lawson on Contracts (2d ed.), p. 227, sec. 184.

"Such a check, of course, would not constitute payment, if not in fact honored on presentation in the ordinary course of business. The agent could not accept such a check in absolute payment and satisfaction. He can, however, receive a check which he has reason to believe will be honored upon presentation as a convenient and customary way of obtaining the money which he is authorized to collect. Such a payment offers no greater temptation to the agent than the payment of the money would offer. If the check is paid by the bank, then the agent has received what he was authorized to receive, and, if not paid when presented, the creditor has lost nothing. The reason for the rule which does not permit a payment to an agent by note, mortgage, etc., does not apply, when payment is made by a check which is actually cashed by the bank upon which it was drawn. The cases where checks were made payable to the principal, and wrongfully indorsed and collected by the agent, have no application, as in those cases they were not paid in due course."

[5] Here, the check given by the defendant was paid in due course under section 3169 of our Civil Code, having been paid on presentation to the holder in good faith and without notice of any defect in the title.

In the opinion quoted the court was dealing with a check drawn on a bank in the city where the check was delivered; but the rule is not to be so closely circumscribed in its application. In *Jessup* v. *Carey*, 61 Ind. 584, a check held to have been equivalent to cash was drawn on a bank in Indianapolis, which is in Marion County, and was delivered at Noblesville in Hamilton County. The criterion is whether the bank is so located as to render the check acceptable

under the usages of trade, and there is reason to believe that the drawer is in good credit so that the check will be honored in due course. No point is made by the appellant in this case because the check was drawn on a San Diego bank, as was the check for the initial payment.

In *Stevenson* v. *Fox,* 19 Misc. Rep. 177 [43 N. Y. Supp. 253], an agent of plaintiffs, named Renner, who among other things had authority to make sales and receive payments, allowed a deduction from a bill of goods previously sold defendant, and then, at his own request receiving a check for the reduced amount payable to himself personally, Renner misappropriated the proceeds. The court, sustaining the defense of payment, said: "Against the appellants' first contention appears evidence of express authority in Renner to collect sums due to his principal, and therefore, whether in cash or in personal check, the payment, if made to the agent in his capacity as such, was payment to the principal." A like view was expressed in *Cohen* v. *O'Connor,* 5 Daly (N. Y.), 28, where the court declared: "The objection that this was not a direct payment of money to the agent and as requested is equally untenable as if the money had been actually paid by the bank and lost by the agent."

In *Harbach* v. *Colvin,* 72 Iowa, 638 [35 N. W. 663], plaintiff was a junior mortgagee of property on which defendant held a first mortgage in course of foreclosure. To protect his second mortgage plaintiff, through one Creighton, who was defendant's attorney in the foreclosure suit, took an assignment of defendant's mortgage, and in payment therefor delivered to Creighton a check to Creighton's order. This check was deposited by Creighton to his own credit in bank, and the proceeds were later converted to his own use. The foreclosure suit proceeded; and the property being sold at the sale to defendant, plaintiff instituted action to establish his superior equity. The court held that Creighton, as attorney of record, had authority to receive payment for his client, and that the defendant was therefore chargeable with payment through the medium of the check as fully as if money had actually passed.

A somewhat similar situation is exhibited in *Bridges* v. *Garrett,* L. R. 5 C. P. 451. There Craig, an agent representing plaintiff in the sale of a copyhold interest to defendant, received from defendant a check to Craig's order in an

amount including the purchase price and certain charges of Craig himself as solicitor. Craig deposited the check in his bank, but the bank applied the amount in its own favor in settlement of an overdraft in Craig's account. In relation to the effect of the payment by check drawn to Craig's order, Cockburn, C. J., delivered himself as follows: "There is no doubt that, where an agent is authorized to receive money for his principal, he cannot allow it by way of set-off in accounts between the payer and himself; he must receive it in money. If, however, payment is made by cheque, and the cheque is duly honoured, that is a payment in cash. There is nothing in the circumstance of a cheque being given which invalidates the payment. . . . If Craig was authorized to receive the money, I think the payment to him was a payment to the plaintiff, and that there was nothing in the mode of payment to take the case out of the ordinary rule." Concurring in this view, Justice Blackburn remarked: "Where the person to whom the money is paid stands in the relation of a clerk or servant, the payment to him, whether in cash or by a cheque which is afterwards paid, is a good payment to the principal."

Likewise in *Bardwell* v. *American Express Co.*, 35 Minn. 344 [28 N. W. 925], defendant received from plaintiff for collection a draft on a resident of Nebraska, which defendant forwarded to its local agent. The agent received from the drawee a check covering that draft and also certain other demands which the agent had in charge. The check was duly honored, but the agent absconded without accounting for the collection. The defendant was held liable to plaintiff for the amount so collected on plaintiff's draft. And in *Pate* v. *Westacott*, L. R. (1898) 1 Q. B. Div. (Eng.) 272, 278, it is said: "If an agent is merely to collect money, taking a check from a person having a bank account is not a departure from his authority."

In *Hooker* v. *Burr*, 137 Cal. 663 [99 Am. St. Rep. 17, 70 Pac. 778], the question arose whether the delivery of a check to a sheriff operated to effectuate a statutory redemption of realty sold under execution sale. The court, citing from other states several cases presenting a similar problem, held that the sheriff, as agent for the execution purchaser, had authority to accept, as a provisional legal payment, a check in a form convenient for the transfer of money; that upon

payment of the check the redemption became absolute as of the time of delivery of the check to the sheriff, and that a valid redemption had therefore taken place.

[6] Following this general current of authority, we conclude that the check drawn to the order of plaintiff's salesman, and honored in due course, constituted a payment of cash to plaintiff as of the time of the delivery of the automobile to the defendants, and that the trial court was correct in the judgment which it rendered.

[7] It remains but to note plaintiff's exceptions to the admission by the court of certain evidence over plaintiff's objection. It is urged that the conversation between A. W. Treadwell and Mr. Reidy, plaintiff's president, on June 26th, was not admissible, and that prejudicial error resulted from receiving evidence of a declaration made by Reidy on that occasion. At the time of the conversation Reidy was engaged on plaintiff's behalf in seeking to ferret out what had occurred between Treadwell and plaintiff's admitted salesman concerning payment and delivery. Reidy went to Treadwell on that errand in company with George Campbell, and while drawing from Treadwell an account of the circumstances attending the closing of the sale, Reidy himself in response to a question as to whether he knew that Treadwell was to be at plaintiff's establishment on June 6th, said, "Yes; I was in San Francisco on the 6th, however, and I told the man to take care of you when you came." Neither Reidy nor Campbell denies that Reidy so spoke. Reidy's statement concerning this fact within his personal knowledge was made in the course of an investigation which he was making in the interest of his company, and was a declaration by him as the chief executive officer while in the performance of duty. There was no error in admitting the declaration made under those circumstances.

Other testimony concerning statements of plaintiff's president was given by Edna M. Moore and John H. Moore, but their testimony related to a different cause of action from that involved in this appeal. The defendants interposed a cross-complaint for damages on the ground of fraud, alleging that the car purchased was represented to be a 1922 model when in fact it was a 1921 model, possessing a value of only $2,150. The finding on that issue was, however, in favor of plaintiff, and no appeal appears to have been

taken by defendants. The testimony of the two witnesses mentioned bore only upon the issue arising under the cross-complaint, and can have no effect upon this appeal.

The judgment from which plaintiff appeals is affirmed.

Works, P. J., and Thompson, J., concurred.