[Civ. No. 11085.   First Appellate District, Division Two.—June 1, 1939.]

In the Matter of the Estate of HERMINIA PERALTA DARGIE, Deceased.   ANTONIO RODRIGUES MARTIN, Appellant, v. PERALTA P. WILSON, Administrator, etc., et al., Respondents.

W. H. Metson and P. H. McCarthy, Jr., for Appellant.

Morgan J. Doyle, J. Joseph Sullivan and Robinson, Price & MacDonald for Respondents.

SPENCE, J.—This is an appeal from an order confirming a probate sale.

The sole appellant is Antonio Rodrigues Martin. Under the will of Herminia Peralta Dargie, deceased, said appellant was entitled to one-half of the residuum of the estate. Several years before the sale, appellant had assigned his entire interest in the estate as security. On May 8, 1938, his assignees reassigned to him a one per cent interest therein. During the pendency of this appeal, William T. Summers, the executor, died, and Peralta P. Wilson was substituted in his place and stead and now appears as one of the respondents herein. William F. Knowland, J. Russell Knowland, Jr., and Franklin Investment Company, the remaining respondents, were the purchasers at the probate sale.

Herminia Peralta Dargie died on December 8, 1929. Her estate had been in probate for approximately nine years at the time of the sale in question. The principal assets of the estate consisted of 899 shares of stock in the Tribune Building Company and 7,500 shares of stock of the Tribune Publishing Company. These stock holdings were insufficient to give the estate control of either of said corporations. Said corporations were closed corporations; their stocks had never been listed upon any exchange; and there had not been any sales of said stocks for more than 20 years. Stocks in general, and newspaper stocks in particular, had constantly declined following the time of the death of said deceased in 1929. Both of the above-mentioned corporations had ceased paying dividends.

The estate of the deceased was indebted for the expenses of administration, taxes and other items and there were numerous legatees named in the will. Some of said legatees had petitioned to compel a sale of sufficient assets to meet the expenses and cash bequests. Interest was running upon said legacies and the delay in consummating such a sale was involving a cost to the estate of approximately $1500 per month. The executor had unsuccessfully endeavored for approximately three years to negotiate a sale of some or all of these stocks which were the estate's principal assets. There had been many conferences and a great deal of correspondence concerning the situation between the executor and the other interested parties including the then counsel for appellant. The executor finally determined to call for competitive bids and consulted with the other interested parties regarding the form of notice of sale to be used. Counsel also discussed the

proposed form of notice in the presence of the trial judge. The trial judge stated that the question was one for the executor to decide and refused to express any opinion on the course to be pursued.

The executor thereafter posted and published a notice of sale stating that he would sell, subject to confirmation by the court, on the 18th day of April, 1938, at 12 o'clock noon, for cash, to the highest bidder:

"(a) As a whole, all of the following described shares, namely, 899 shares of the capital stock of the Tribune Building Company, a California corporation; 7,500 shares of the capital stock of the Tribune Publishing Co., a California corporation; or

"(b) In combination, 899 of said shares of Tribune Building Company and 3750 of said shares of The Tribune Publishing Co.

"All bids or offers must be in writing, signed by the bidder and must be accompanied by a deposit of not less than 10% of the purchase price. . . . The unpaid balance of the purchase price shall be paid by the bidder in cash in full when the order confirming sale to such bidder shall become final and the shares, the sale of which is confirmed to him, shall have been delivered to him."

Only one bid was received, being the bid of respondents William F. Knowland, J. Russell Knowland, Jr., and Franklin Investment Company. Said bid was in the sum of $311,200 and was for 899 shares of stock of the Tribune Building Company and 3,750 shares of stock of the Tribune Publishing Company. The bid was made in writing and was accompanied by a deposit in the sum of $31,120 consisting of a good check, made payable to the executor and drawn by the Farmers & Merchants Savings Bank of Oakland on the Wells Fargo Bank & Union Trust Co. of San Francisco. Said bid was accepted by the executor, subject to confirmation by the court. Said check was accepted by the executor as the required deposit and the money was credited to the executor's bank account.

The executor promptly filed a return of sale and petition for confirmation. A few days later, the executor, by leave of court, filed an amended return and petition for confirmation in which he specifically referred to all of the allegations of his original return and incorporated them by reference in the

amended return. The first return had alleged the posting and publication of notice of sale but did not set forth in detail the facts showing how the notice had been posted and published. These detailed facts were alleged in the amended return.

Some three weeks later, and on May 9, 1938, the amended return came on regularly for hearing. Notice thereof had been given by posting and special notice thereof had been served by mail upon 66 persons interested in the estate, including appellant. Said appellant had been represented by counsel throughout the probate proceedings, but on the morning of the hearing, appellant appeared by new counsel who had been substituted just prior to the hearing. Appellant's new counsel orally requested a continuance but the request was denied. Appellant then filed written objections to the confirmation of the sale which consisted of a denial of the allegations of the return together with allegations that the sale was unnecessary; that it was not for the best interests of the estate; that the buyer had not come into court with clean hands; that the court should not approve conduct on the part of the buyer which constituted an alleged breach of trust to the estate; that the price bid was too low and was less than 90 per cent of the appraised value; and that no appraisement had been made within a year.

The hearing proceeded upon the amended return and petition and upon the objections thereto. It consumed ten days, commencing on May 9, 1938, and ending on May 27, 1938. The only opposition made to the confirmation of the sale was the opposition of appellant. Many interested parties appeared at the hearing and requested confirmation of the sale. At the conclusion of the hearing, a call was made in open court for other bids but no response was made. Arguments were heard and thereafter the court made its order confirming the sale.

The trial court found that all of the allegations of the amended return and petition were true and made other specific findings. It further found that the allegations contained in the written objections of appellant were untrue except that it found that it was true that the price was less than 90 per cent of the appraised value and that the property had not been appraised within the year. Among the facts thus found were the following: That the amount of unpaid expenses and cash bequests, together with interest,

was approximately $350,000; that there was less than $20,000 in cash on hand and in money which would be shortly payable; that the above-mentioned corporations were not paying dividends and it could not be determined when, if ever, the payment of dividends would be resumed; that it appeared that the probable sole income of the estate during 1938 would be dividends on other stock which dividends had amounted to $750 in 1937 and would probably continue; that the accruing interest items alone would exceed the probable gross annual revenue by approximately $15,000; that a sale was necessary for the purpose of paying debts, expenses of administration, taxes and cash bequests and that the above-mentioned stocks were the only assets of the estate of sufficient value to produce the necessary funds. The trial court further found that notice of sale had been given as prescribed by law and proof thereof had been duly made; that the sale had been made to the purchasing respondents as set forth in the return for the sum of $311,200; that said sale was legally made and fairly conducted; that the bid was not disproportionate to the value of the property so sold; that no higher price had been offered; and that a higher bid could not be obtained. The allegations contained in appellant's written objections, which allegations are summarized above, were found to be untrue except as above noted.

It was therefore ordered that appellant's objections be overruled and denied; that the sale of said 899 shares of stock of Tribune Building Company and 3,750 shares of stock of Tribune Publishing Co. to the purchasing respondents for the sum of $311,200 be confirmed; and that the executor be directed to transfer and deliver said stock to the purchasing respondents upon payment by said respondents of the purchase price.

Appellant makes no direct claim that the evidence was insufficient to support the findings of the court. An indirect claim to that effect may be inferred from other contentions made but a review of the record herein shows that all of the findings find ample support in the evidence. We will proceed to discuss appellant's contentions as presented in his brief.

■ Appellant first contends that "The superior court had no jurisdiction to confirm the sale." This contention is based upon the claims that "there was no sale to be confirmed"

and that the amended return and petition "were fatally defective". We find no merit in this contention. Appellant cites authority to the effect that the proceedings for the sale of property of the estate of a decedent are statutory and that the validity of such proceedings depends upon a substantial compliance with the law. (*Miller* v. *Superior Court*, 84 Cal. App. 605 [258 Pac. 614].) This general principle may be conceded but we cannot agree with appellant's argument that there was not a substantial compliance with the law in the proceedings leading up to the confirmation of the sale in question. He argues that both the notice of sale and the bid were defective but we believe there was a substantial compliance, if not a literal compliance, with every requirement relating thereto.

As we understand appellant's argument, it is that as the notice of sale did not require that purchase price be paid immediately upon confirmation but required that it be paid at the time that the order of confirmation became final and upon delivery of the property, said notice called for a sale upon credit rather than a cash sale and was fatally defective as it did not require a payment of 25 per cent of the purchase price in cash. (Probate Code, sec. 773.) This argument is in turn based upon the claim that title passes upon confirmation. It seems settled, however, that title does not pass upon confirmation, but at a time subsequent thereto when the executor makes the transfer and delivery of the property pursuant to the order of confirmation. (*Lass* v. *Eliassen*, 94 Cal. App. 175 [270 Pac. 745]; *Barnes* v. *Morrison*, 102 Cal. App. 152 [282 Pac. 986]; see, also, *Estate of Benvenuto*, 183 Cal. 382, 383 [191 Pac. 678]; 11B Cal. Jur., p. 164.) The code sections, such as Probate Code, section 755, merely indicate that no title can pass prior to confirmation. We are therefore of the opinion that the notice of sale called for a cash sale and that the provisions of the code relating to credit sales were not applicable. Under the same heading, appellant states that the stock of the Tribune Building Company had been pledged for a loan of some $40,000 and he calls attention to sections 762 and 763 of the Probate Code. He claims that it would be impossible to comply therewith, as the purchasers were not required under the notice of sale to pay the balance of the purchase price until the shares were

actually delivered. ■ Assuming, without deciding, that said sections are applicable under the facts involved here and further assuming that it is possible that the indebtedness for which the stock had been pledged will not have been paid prior to the time of the consummation of the sale, said sections merely outline the procedure to be followed upon payment of the purchase price. There is nothing in said sections which could invalidate an otherwise valid notice of sale and we find no impossibility of full compliance with said sections upon the payment of the purchase price.

■ The bid followed precisely the terms of the notice of sale. It was therefore not defective as claimed by appellant unless there be merit in his further claim that it was not accompanied by a deposit of ten per cent of the purchase price. This claim is based solely upon the fact that a good check for the sum of $31,120, rather than actual cash in that amount, accompanied the bid. Said check was promptly cashed and the proceeds were in the hands of the executor before the return was filed. We need not discuss the question of whether the law required a deposit on such a sale of personal property or the question of whether the notice here required the deposit to be made in cash. We may so assume but we are nevertheless of the opinion that the delivery and acceptance of a good check under the circumstances constituted a substantial compliance with all requirements of the law and of the notice of sale. (*Hooker* v. *Burr,* 137 Cal. 663 [70 Pac. 778, 99 Am. St. Rep. 17] ; see, also, *California Stearns Co.* v. *Treadwell,* 82 Cal. App. 553 [256 Pac. 242].) A substantial compliance is sufficient upon a probate sale. (*Estate of Heydenfeldt,* 127 Cal. 456 [59 Pac. 839] ; *Richardson* v. *Butler,* 82 Cal. 174 [23 Pac. 9, 16 Am. St. Rep. 101] ; *Jerrue* v. *Superior Court,* 7 Cal. App. 717 [95 Pac. 906] ; *Estate of Reed,* 3 Cal. App. 142 [85 Pac. 155] ; see, also, *Stewart* v. *Justice's Court,* 7 Cal. App. (2d) 61 [45 Pac. (2d) 424].) It may well be that the executor could not be required to accept a check as a deposit (compare *Mitchell* v. *Alpha Hardware etc. Co.,* 7 Cal. App. (2d) 52 [45 Pac. (2d) 442] ; *Kelly* v. *Barnet,* 24 Cal. App. 119 [140 Pac. 605]), but where an executor does receive and accept a good check as a deposit and promptly cashes the same, it would be hypertechnical to hold that the sale is invalidated by the failure of the bidder to deliver or the fail-

ure of the executor to demand the payment of actual cash. As was said in *Hooker* v. *Burr, supra,* at page 668, " . . . a check, after all, is but a convenient form of transferring money . . . " And again in *California Stearns Co.* v. *Treadwell supra,* at page 559, "It would seem, however, that this court should take judicial notice of the fact that checks and drafts are usual and ordinary means of transacting business and transferring money in all business transactions."

The claim that the amended return and petition were fatally defective is based upon the fact that certain allegations contained in the original return were incorporated by reference into the amended return and were not again set forth in full in the amended return. It is conceded that the allegations so incorporated by reference were full and complete but it is argued that there is no statutory authority for such incorporation by reference. Said point was not raised in appellant's written objections filed in the court below but, in any event, we find no merit therein. The general rule is that in the absence of restrictions imposed by statute or by rules of court, facts alleged in other pleadings in the same case may be incorporated by reference in subsequent pleadings therein. (49 Cor. Jur. 550, sec. 752; 49 Cor. Jur. 37, sec. 13.) We find no such restrictions in the statutes or rules of court in this state and such incorporation by reference has become a recognized and accepted method of pleading. (*Reid* v. *Merrill,* 4 Cal. (2d) 693 [52 Pac. (2d) 218]; *Treweek* v. *Howard,* 105 Cal. 434 [39 Pac. 20]; *Clark* v. *Berlin Realty Co.,* 33 Cal. App. 50 [164 Pac. 333].)

We conclude that none of the above-mentioned claims of appellant sustain his contention that the court had no jurisdiction to confirm the sale. On the contrary, it appears that there was a proper notice, bid and amended return and petition, all of which substantially complied with all requirements. The court therefore had jurisdiction.

Appellant makes the further contention that "the Superior Court violated the Fourteenth Amendment of the United States Constitution and section 13 of article I of the Constitution of the State of California". From the argument it appears that appellant claims that he was denied due process of law as (1) the court refused to grant a continuance of the hearing and (2) as "the record discloses that the

entire matter had been prejudged and the court made no secret of its bias and prejudice to the extent that due process was impossible''.

We find neither an abuse of discretion nor any denial of due process on the part of the trial court in refusing to grant the request for a continuance. Said request was orally made in open court when the cause was called and there was no attempt to comply with the requirements of Rule 12 of the Rules of the Superior Court adopted by the Judicial Council or with the requirements of Rule XIX of the Rules of the Alameda County Superior Court relating to applications for continuances. But aside from this, appellant changed counsel shortly before the hearing, gave no notice thereof prior to the hearing, and made no explanation thereof. His new counsel admitted that they had a general knowledge of the matter before the court but they nevertheless asked for a continuance of two weeks. The trial court was familiar with the conditions of the estate and the added expense which would be involved by delay. Many interested parties were in court and ready to proceed.

It is the policy of the law to expedite the administration of estates and to avoid unnecessary delay and expense (*Estate of Smith,* 16 Cal. App. (2d) 239 [60 Pac. (2d) 574] ; *Estate of Morrison,* 125 Cal. App. 504 [14 Pac. (2d) 102]), and it ''is a part of the bounden duty of the trial judge, in the absence of some weighty reason to the contrary, to vigorously insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit''. (*Flynn* v. *Fink,* 60 Cal. App. 670, 673 [213 Pac. 716].) Parties have no absolute right to a continuance merely because of an unexplained change of counsel immediately preceding the time set for the hearing of the cause and, in the absence of some further showing, it is not an abuse of discretion to refuse a continuance under such circumstances. (*Flynn* v. *Fink, supra; Berger* v. *Mantle,* 18 Cal. App. (2d) 245 [63 Pac. (2d) 335].) There was no such further showing made in the present case.

■ The second claim of appellant under the above-mentioned heading is not borne out by the record. The argument is that the trial judge conferred with the attorneys and passed upon the form of the notice of sale before said notice was posted and published. The evidence is to the contrary and

shows that the trial judge had refused to express any opinion on the form of notice to be used. There is not a particle of evidence to show that any part of "the entire matter had been prejudged". Neither is the claim of bias or prejudice on the part of the trial judge supported by the record. Appellant has set forth a few remarks and rulings of the trial judge during the lengthy hearing and apparently claims that these remarks and rulings should be held by this court to show such bias and prejudice as to amount to a denial of due process. This claim may not be sustained. A review of the voluminous record, consisting of three volumes, shows that appellant was accorded a full and fair hearing. The hearing was greatly lengthened by the extensive and repetitious cross-examination conducted by counsel for appellant and the rulings and remarks of the trial judge were obviously made in an effort to expedite the hearing and to exclude irrelevant testimony and testimony which was so remote in point of time as to be valueless. We find neither prejudicial error nor any denial of due process in said remarks and rulings.

In his argument on the subject of the alleged denial of due process, appellant cites and relies upon *McClatchy* v. *Superior Court,* 119 Cal. 413 [51 Pac. 696, 39 L. R. A. 691]. He insists that it "is in point and determinative of the matters in support of which it is cited". In our opinion, however, a review of the voluminous record in the present case shows that the rules laid down in the McClatchy case can have no application here.

The final contention of appellant is that "The confirmation of this so-called sale was an abuse of discretion." His claims under this heading appear to be (1) that the price was too low, (2) that the confirmation constituted an approval of a breach of trust owed by the buyer to the estate and (3) that the proposed sale was not necessary. These claims apparently constitute an indirect attack upon the sufficiency of the evidence to sustain the trial court's findings to the contrary but there was ample evidence to sustain all of said findings.

The provisions of section 784 of the Probate Code, requiring that the sum offered be at least 90 per cent of the appraised value, relate by their terms only to sales of real property. There are no similar provisions relating to sales of personal property.

Appellant states that the stocks were sold here for approximately 60 per cent of their appraised value. Assuming this to be true, it must be recalled that the appraisement purported to show their value in December, 1929, while the sale was made in April, 1938. It is a matter of common knowledge that 1929 values are not any certain index to values in 1938. But it is not necessary to rest on matters of common knowledge for there was ample evidence to show that the bid price represented the fair value of the stocks in question in April, 1938, and it is not claimed that there was any other person then or at any time since who was then or has since been willing to offer a higher price. It may be added that the testimony showed that the average value of good industrial listed stocks in April, 1938, was about 49 per cent of their average value in December, 1929.

■ Appellant argues that there was an alleged breach of trust owed by the buyers to the estate. The findings of the trial court against appellant on this issue find ample support. It may be true that the Tribune Building Company and the Tribune Publishing Co. "are controlled by the Knowland interests" but there appears to be nothing in the record to show anything in the handling of the affairs of said corporations which constituted a breach of trust. The argument with respect to the non-necessity of the sale is closely linked to the foregoing argument for it is argued "such apparent necessity as may seem to exist is the creature of the Knowland interests". Appellant points to testimony regarding the dividend policy and the salary policy adopted by the two corporations above mentioned. There appears to be nothing about said policies which would stamp them as anything other than good business practices on the part of said corporations or as anything out of line with the policies adopted by other corporations under similar circumstances during the past several years. We therefore conclude that there was no abuse of discretion upon the part of the court in confirming said sale.

The order confirming the sale is affirmed. Respondents will recover their costs on appeal.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 31, 1939.