[Civ. No. 19785. First Dist., Div. Two. Aug. 18, 1961.]

Estate of LYDIA A. HUNTER, Deceased. WILLIAM WARD, Appellant, v. CLIFFORD B. HUNTER, as Administrator, etc., Respondent.

Ronald H. Maas for Appellant.

Delmas, Berwick & Vatuone and Emery J. Delmas for Respondent.

SHOEMAKER, J.—This is an appeal from an order confirming a probate sale of real property.

Appellant William Ward and his sister, Frances Ward Anschen, heirs and legatees of Lydia A. Hunter, the decedent, filed objections to the confirmation of sale on the grounds (1) that it would not be in the best interests of the estate since the area surrounding the property was in the process of being developed, and a much higher price could be obtained if the sale were delayed; (2) that the proposed sale would depress the value of the adjoining land belonging to Hunter Ranch Company, 50 per cent of which stock was owned by the estate; and (3) that they were the only persons entitled to the real property being sold and they desired to continue their residence thereon.

The main assets of the estate consisted of two parcels of realty, one of which was the subject of the above mentioned sale, and 50 per cent of the stock of Hunter Ranch Company, the other 50 per cent being owned by appellant.

On August 9, 1960, a hearing was held on the objections. Respondent administrator showed that the obligations of the estate were in excess of $140,000. The real property had been sold for $148,428. Appellant admitted that his own assets would not be sufficient to meet the debts of the estate. At the conclusion of the hearing, the trial judge overruled the objections and referred the matter to the probate department for confirmation of the sale. On August 23, 1960, the order confirming the sale was made and entered.

All of the contentions raised on this appeal are directed toward procedural defects in the probate sale and respondent's petition for confirmation of sale. Respondent contends that appellant should have raised these defects at the hearing and that he is not entitled to raise them for the first time on appeal. However, as was pointed out by the Supreme Court in *Ward* v. *Taggart* (1959), 51 Cal.2d 736 [336 P.2d 534]:

". . . it is settled that a change in theory is permitted on appeal when 'a question of law only is presented on the facts appearing in the record. . . .' (*Panopulos* v. *Maderis*, 47 Cal. 2d 337, 341 [303 P.2d 738]; *American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d 192, 200 [318 P.2d 84].)

The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual

situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' (*Panopulos* v. *Maderis, supra,* 47 Cal.2d at 341.) . . .'' (P. 742.) The points which appellant now raises are all questions of law which may be resolved on this appeal solely by referring to documents on file with the court and to pertinent sections of the California Probate Code. Therefore, appellant's failure to raise these points at the hearing cannot be considered prejudicial to respondent.

Appellant's first contention is that respondent administrator failed to comply with Probate Code, section 783, which requires that notice be given if an administrator chooses to postpone a sale. He argues that the notice of sale of real property provided that the sale would be held on or after July 8, 1960, and that the sale did not take place until July 19, 1960; hence respondent was required to give notice of postponement in accordance with the aforesaid section and that failure to do so invalidated the sale.

Respondent replies that Probate Code, section 783, is applicable only to public sales, and this being a private sale, he was under no obligation to give notice of postponement. We agree with respondent.

Although we have found no decision which has determined the scope of section 783, Probate Code, a mere reading of the related provisions of the Probate Code satisfies us that different requirements apply to private and public sales.

Section 782 of the Probate Code provides as follows: "In the case of a private sale, the notice must state a place where bids or offers will be received, and a day *on or after* which the sale will be made, which day must be at least fifteen days from the first publication or posting of the notice, and the sale must not be made before that day, but must be made within one year thereafter; . . .'' [Emphasis supplied.]

As will be noted, this section provides that in the case of a private sale, no notice need be given as to the specific day on which such a sale will be held. All that is required is that the notice state the earliest date upon which the sale may be held. If the sale is then held upon the day named or at any subsequent time within a year of this date, the sale is timely made within the period specified in the notice and the question of postponement never enters the picture.

On the other hand, a sale at public auction is governed by more stringent requirements. Section 781 of the Probate

Code provides that such a sale "must be made between the hours of 9 o'clock in the morning and the setting of the sun on the same day, and must be made on the day named in the notice of sale, unless the same is postponed."

Section 783 of the Probate Code provides as follows: "If, at the time appointed for the sale, the executor or administrator deems it for the interest of all persons concerned therein that the same be postponed, he may postpone it from time to time, not exceeding in all three months. In case of a postponement, notice thereof must be given by a public declaration at the time and place first appointed for the sale."

This code section is clearly complementary to that governing public sales. The fact that the sale may be postponed from time to time but not exceeding in all three months can be applied reasonably only to a public sale. Any interpretation which would encompass private sales would directly conflict with the one-year period allotted by the statute for consummating a private sale. Further, the requirement as to "public declaration" is only compatible with a type of sale we call "public auction." Section 783 having no application to private sales, respondent was under no necessity to file a notice or make public declaration of postponement.

Appellant next contends that respondent filed an amended petition for confirmation of sale without notice to appellant or leave of court. Appellant states that respondent filed his original petition for confirmation of sale on July 20, 1960, and therein alleged that the sale had been held on June 29, 1960, and that on July 22, 1960, respondent filed a petition designated "Supplemental and Explanatory Petition for Return of Sale of Real Property" in which he alleged that the date of sale stated in the original petition had inadvertently been stated as June 29, 1960, whereas in truth it was July 19, 1960. Appellant argues that the second petition must be deemed an amendment rather than a supplement to the first petition because it does not allege facts which occurred subsequent to the filing of the original petition, and since Probate Code, section 1233, makes applicable to probate proceedings part 2 of the Code of Civil Procedure, and no steps were taken under any of the provisions contained in said portion of the Code of Civil Procedure to amend the original petition, that the offered supplement or amendment is of no effect.

While section 473 of the Code of Civil Procedure authorizes minor amendments without requiring notice to the ad-

verse party, notice is necessary where an amendment concerns a matter of substance. In this case, the amendment supplied a vital jurisdictional fact and cannot be treated as a mere clerical mistake, and inasmuch as respondent admittedly gave no notice under said code section to amend his petition, his action was clearly improper. Although respondent failed to amend in a proper manner, the question to be determined is whether appellant can be said to have suffered prejudice as a result of respondent's action, and this we cannot find.

Where an amendment to a complaint sets forth a whole new cause of action, it is obvious that notice must be given to the adverse party because his answer, framed in terms of the original complaint, will not meet the new issues raised by the amended complaint and he will be forced to go to trial unprepared for the issues before the court. In the present situation, it appears to us that appellant did not predicate his defense on the fact, as alleged in respondent's original petition, that the sale had been held at too early a date and was therefore void. The record shows that appellant failed to make any objection to the date of the sale and it is difficult to see how any prejudice could be suffered by the manner in which the correction was brought to the attention of the court.

The rule is well established that great liberality will be used in allowing amendments and where an amendment provides " 'merely the addition of matters essential to make the original cause of action complete' " the amendment should certainly be allowed by the court. (*Woods* v. *Cook* (1936), 14 Cal.App.2d 560, 563 [58 P.2d 965].) Such an amendment effects no change in the nature of the case, and can therefore cause no surprise or prejudice to the adverse party. (See *Ruiz* v. *Santa Barbara Gas etc. Co.* (1912), 164 Cal. 188, 194 [128 P. 330]; *Rauer's Law etc. Co.* v. *Leffingwell* (1909), 11 Cal.App. 494, 495 [105 P. 427].)

There is no reason why a different rule should be applicable merely because an amendment of this nature was made without leave of court and without notice to the adverse party. From a consideration of the record in this case, it is evident that notice of respondent's amendment would have had no effect whatever on appellant's defense or on his preparation for trial.

Appellant's final contention is that the public notice of sale set forth as terms and conditions of the sale, "Cash or part cash and part credit to be acceptable to the Adminis-

trator With Will Annexed and the above-entitled Court; ten (10%) percent of the amount bid to accompany the offer and the balance to be paid upon confirmation of sale by the Superior Court,'' but that the sale, as actually consummated, deviated substantially from the terms so set forth. Appellant avers that the purchaser was not required to make any down payment in cash, offering a check instead, and that the purchaser was allowed to pay the balance of the purchase price approximately a week later than specified in the notice. Appellant therefore alleges that the sale was not legally made or fairly conducted and that the order confirming the sale should be reversed.

It is appellant's position that a check cannot be viewed as compliance with a notice requiring cash and further, that since it was payable to City Title Insurance Company, it cannot be treated as payment to the administrator.

The appellant's position is unsound for the transaction of business and commerce would be seriously curtailed if deposits in excess of several hundred dollars were required to be made in currency. The method pursued in this sale is supported by authority. In *Estate of Dargie* (1939), 33 Cal.App.2d 148 [91 P.2d 126], the question before the court was whether a notice of sale required the deposit to be made in cash. The court found it unnecessary to answer this question, stating that even if cash were required, a good check was sufficient to meet this requirement. The court stated:

''. . . We need not discuss . . . the question of whether the notice here required the deposit to be made in cash. We may so assume but we are nevertheless of the opinion that the delivery and acceptance of a good check under the circumstances constituted a substantial compliance with all requirements of the law and of the notice of sale. [Citations.] A substantial compliance is sufficient upon a probate sale. [Citations.] It may well be that the executor could not be required to accept a check as a deposit [citations], but where an executor does receive and accept a good check as a deposit and promptly cashes the same, it would be hypertechnical to hold that the sale is invalidated by the failure of the bidder to deliver or the failure of the executor to demand the payment of actual cash. As was said in *Hooker* v. *Burr, supra* [137 Cal. 663 (70 P. 778, 99 Am.St.Rep. 17)], at page 668, '. . . a check, after all, is but a convenient form of transferring money . . .' And again in *California Stearns*

*Co.* v. *Treadwell supra* [82 Cal.App. 553 (256 P. 242)], at page 559, 'It would seem, however, that this court should take judicial notice of the fact that checks and drafts are usual and ordinary means of transacting business and transferring money in all business transactions.' '' (Pp. 156-157.)

Appellant argues, however, that the *Dargie* case may be distinguished from the case at bar because in the *Dargie* case the check was a good check as evidenced by actually having been cashed. Such a distinction would not appear to be a valid one. Appellant's hypothesis that the check in the case at bar may be worthless appears to be based solely on the fact that ''no evidence was submitted as to its value.'' There would seem to be no reason why such evidence should have been produced as to a check which was fair on its face. The presumptions are all in its favor (see Code Civ. Proc., § 1963, subds. 1, 19, 20). The burden was upon appellant to demonstrate just why this check was objectionable; he made no attempt to do so.

 Appellant next argues that the check, even if deemed a proper substitute for cash, was payable to City Title Insurance Company rather than to respondent administrator. Here again, appellant appears to be raising what is essentially a hypertechnical argument. Real estate transactions of this nature are commonly handled by way of escrow for the convenience and protection of all parties involved. The terms of the deposit receipt agreement clearly indicate that the check was to be held for the benefit of respondent-seller. Furthermore, the notice itself does not specifically state that the down payment must be made directly to respondent, but merely provides that 10 per cent of the amount bid is ''to accompany the offer.'' Nothing contained within the notice indicates that respondent was not free to utilize an escrow agent, as he evidently chose to do in the instant case.

 In regard to the statement in the notice that the balance of the purchase price was to be paid upon confirmation of sale, appellant contends that the order confirming sale was filed on August 23, 1960, but that the deposit receipt agreement provided that the balance was to be paid on September 1, 1960. Appellant is evidently contending that a balance due on confirmation of sale must be paid upon the precise day that the order confirming the sale is entered and that a payment made within nine days of the entry of this order cannot be deemed to fulfill this term. Appellant cites

no authority for his position, and it would seem doubtful that such a rigid compliance with the terms set forth in the notice is necessary. Especially would this seem true in view of the fact that appellant's entire predication of error is based on the fact that had prospective bidders been aware of the lenient terms upon which the sale was to be conducted, more of them might have been willing to attend and a higher bid might have been obtained on the property. It seems highly doubtful that any of the prospective bidders who refrained from attending the sale would have acted differently had they known that the balance of the purchase price would be due on September 1st rather than on August 23rd. Since the purchase price was made payable within what was certainly a reasonable time of the order confirming the sale, there was at least a substantial compliance with the terms set forth in the public notice. Substantial compliance with the terms of the notice of sale is sufficient upon a probate sale. (See *Estate of Dargie, supra,* at page 156.)

There being no prejudicial error, the order confirming sale of real property is affirmed.

Kaufman, P. J., and Draper, J., concurred.